**Gordon PARKER and Robert Bailey On Behalf of Themselves and Others Similarly Situated v. John GORCZYK, Commissioner, Vermont Department of Corrections**

[787 A.2d 494]

No. 00-540

September 26, 2001. Defendant, John Gorczyk, Commissioner of the Vermont Department of Corrections, appeals from a summary judgment of the superior court permanently enjoining him from implementing a new policy that would make prisoners convicted of violent felonies ineligible for furlough until the expiration of their minimum sentences. Plaintiffs are two prisoners who are subject to the new policy and a class consisting of all prisoners, present and future, who are incarcerated for committing a violent felony. The superior court concluded that the furlough policy is a rule which must go through rulemaking procedures of the Vermont Administrative Procedure Act (APA) to be effective. We agree and affirm.

This case has already been before us. In *Parker v. Gorczyk*, 170 Vt. 263, 744 A.2d 410 (1999) (*Parker I*), we held that the policy was a valid exercise of the Commissioner's statutory power and does not offend the Vermont Constitution. The material facts leading up to *Parker I* are fully recounted there. *Id.* at 264-66, 744 A.2d at 411-12. In short, the furlough policy is contained in the Department's Offender Classification Manual and provides that furlough can be granted as part of a reintegration plan during the 90 days prior to a prisoner's release date. The amendment in issue states an exception that those incarcerated for a violent felony are not eligible for furlough until their minimum release date. The amendment was issued without going through the notice,

comment and review procedure set out for rules by the APA.

Before *Parker I*, the superior court enjoined defendant from implementing the new furlough policy. The initial preliminary injunction was based on plaintiffs' claim that defendant failed to follow the rulemaking procedure required by the APA. 3 V.S.A. §§ 801-849. Later, the superior court issued a permanent injunction on the ground that the policy violated plaintiffs' due process rights guaranteed by Chapter I, Article 10 of the Vermont Constitution. The court never issued a decision on the merits of plaintiffs' APA claim.

On October 29, 1999, we reversed the superior court's decision, holding that the challenged policy was within defendant's statutory power and does not violate plaintiffs' Vermont constitutional rights. *Parker I*, 170 Vt. at 264, 744 A.2d at 411. We did not address plaintiffs' APA claim, nor did we vacate the superior court's preliminary injunction. Rather, we reversed and remanded the case to the superior court for proceedings on plaintiffs' remaining claims. *Id.* at 278, 744 A.2d at 420.

Subsequently, defendant moved the superior court to dissolve the injunction without determining the merits of plaintiffs' APA claim. Defendant argued that the APA claim was barred because plaintiffs did not raise it in this Court in the appeal. The superior court rejected this argument, invited cross-motions for summary judgment, and granted summary judgment to plaintiffs because it found that the new furlough policy was a "rule" under the APA. The court further found that the opportunity to apply for furlough, though not an interest protected by due process, is a legal right or privilege protected by the APA. Because defendant still had not gone through the APA process for rulemaking, the superior court made the court's earlier temporary injunction permanent.

On appeal, the Commissioner argues that plaintiffs' APA claim was waived because they did not raise it in the initial appeal and that the new furlough policy is not subject to the APA's rulemaking procedure because (1) the policy is a "practice" and not a "rule" under the APA, and (2) without a specific statute requiring use of the APA procedure or an interest protected by due process, plaintiffs have no right to the APA rulemaking process.

The Commissioner first argues that as a prudential matter plaintiffs' failure to assert the APA claim in the *Parker I* appeal should constitute a waiver of the claim. We agree with the superior court that plaintiffs did not waive their APA claim in the first appeal. Plaintiffs raised the APA issue in their complaint. The superior court initially granted a preliminary injunction based on plaintiffs' likelihood of success on the APA claim. The court did not, however, issue a final decision on the merits of plaintiffs' APA . claim and, in issuing permanent relief, shifted to a different ground without addressing the APA claim. On appeal of the superior court's decision, neither party addressed the APA issue. We specifically declined to address it, preferring instead to remand the case to the trial court for further proceedings. *Id.* at 265 n.*, 744 A.2d at 412 n.*. Because the Commissioner did not raise the APA claim on appeal in *Parker I*, plaintiffs did not have a duty to raise it. While we will "affirm a judgment which is correct even if the grounds stated in support of it are erroneous," *Circus Studios, Ltd. v. Tufo*, 145 Vt. 219, 222, 485 A.2d 1261, 1263 (1984), we have never imposed on appellees a duty to raise on appeal claims raised by the parties but undecided by the trial court. As a Court which frequently acts under a limited standard of review, an appellate decision without a lower court decision to review would often be inappropriate. We remanded this case so that the trial court could render judgment on unresolved claims, including the APA claim. Plaintiffs did not waive their ability to present those unresolved claims to the superior court.

With regard to the merits "[s]ummary judgment is appropriate when the party against whom judgment is sought is given the benefit of all reasonable doubts and inferences, but no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law." *Larocque v. State Farm Ins. Co.*, 163 Vt. 617, 618, 660 A.2d 286, 287 (1995) (mem.); V.R.C.P. 56(c). This Court applies the same standard of review on appeal. *State v. Delaney*, 157 Vt. 247, 252, 598 A.2d 138, 141 (1991).

Defendant first argues the new furlough policy is not a rule and, therefore, is not required to go through the APA procedure. The Legislature has granted the Commissioner of Corrections authority to issue rules necessary "for the governing and treatment of persons committed to the custody of the commissioner, the administration of correctional facilities and the regulation of employees under the jurisdiction of the commissioner." 28 V.S.A. § 102(c)(1). The APA establishes certain procedures that an agency must follow in issuing rules, including publication, notice and comment, hearings and legislative review. 3 V.S.A. §§ 836-843. The act does not exempt rules concerning furlough or any other corrections matter from these procedures. 3 V.S.A. § 832 (exemptions from rulemaking procedures); but cf. *id.* § 832(b)(4) (prohibiting inmates from requesting that procedures or practices not considered rules under the APA be subject to rulemaking). Furthermore, the Legislature has not exempted the Department of Corrections from complying with the APA. *Id.* § 831(a). Accordingly, if the Commissioner adopts rules he must do so by following the statutory rulemaking procedures. In this case, the Commissioner did not follow these pro-

cedures in adopting the new furlough policy. Therefore, unless the Department's change of furlough policy did not constitute rulemaking, it is invalid for noncompliance with the APA. *Id.* § 846.

Under the APA, a "rule" is an "agency statement of general applicability which implements, interprets, or prescribes law or policy." *Id.* § 801(b)(9). On its face, the Commissioner's new furlough policy fits this definition of a rule. The Commissioner has prescribed and implemented a written change in furlough policy that is meant to apply generally to a class of prisoners; he is not making an individualized assessment of each prisoner. We conclude that this issue is controlled by *In re Diel*, 158 Vt. 549, 614 A.2d 1223 (1992), a case in which the Vermont Department of Social Welfare adopted, and then rescinded, a policy change on calculation of income which affected 750 recipients in the ANFC welfare program. The department failed to follow the APA procedures for either the adoption or the rescission of the policy. We concluded that the policy was a rule, and the department was required to use the APA procedures, because the policy "interpreted the statute authorizing the ANFC program and both prescribed and implemented a policy intended to apply generally to a class of ANFC recipients." *Id.* at 554, 614 A.2d at 1227; see also 33 V.S.A. § 105(c)(1), (2) ("In addition to other duties imposed by law, the commissioner shall [a]dminister the laws assigned to the department [and f]ix standards and issue regulations necessary to administer those laws . . . ."). The change in furlough policy here likewise interprets the Commissioner's broad power to issue rules necessary "for the governing and treatment of persons committed to the custody of the commissioner." 28 V.S.A. § 102(c)(1). Moreover, just as the rescission of public assistance applied generally to some ANFC recipients, and not the entire public or even all ANFC recipients, the Commis-

sioner's furlough policy applies generally to all prisoners convicted of violent felonies, one third of the prison population.

Defendant argues that the policy is instead a "practice" and thus not subject to the APA rulemaking procedures. See 3 V.S.A. § 801(b)(7). This argument, however, presumes that "rule" and "practice" are mutually exclusive terms as employed in the APA. The operative question here is whether the new policy is a rule. The furlough policy may also be a practice, but because the policy is generally applicable to all prisoners convicted of violent felonies it is a rule and is thus subject to the rulemaking procedures of the APA.

Defendant further seeks to distinguish this case from *In re Diel*. He argues that we required the change in benefit calculations in that case to be subjected to rulemaking procedures only because the plaintiffs there had a protected due process interest in their welfare benefits. Although the *Diel* opinion discusses plaintiffs' due process claim, its evaluation of the requirements of the APA is independent of that discussion. 158 Vt. at 554, 614 A.2d at 1226. Neither *Diel*, nor the governing statute, provides that an agency must use rulemaking procedures when adopting a policy only if it affects a due process interest of one or more persons. 3 V.S.A. § 831(a). Instead, the statute requires use of the rulemaking procedures where due process requires it or "a statute directs or permits an agency to adopt rules." *Id.*

Alternatively, defendant argues that no statute directs or permits him to adopt rules with respect to inmate classification. As we noted in *Parker I*, the authority for the policy is found in part in the authorization to make rules "for the governing and treatment of persons committed to [his custody]." 28 V.S.A. § 102(c)(1); see *Parker I*, 170 Vt. at 270, 744 A.2d at 414. This statute clearly permits the Commissioner to make inmate classification rules, and the

new furlough policy is such a rule. Therefore, in order for this rule to take effect it must go through rulemaking procedures under the APA.

We do not believe this holding is inconsistent with the Commissioner's discretion we acknowledged in *Parker I*. Our earlier holding found that the Commissioner had the power to exercise his discretion through a written eligibility rule. It did not purport to address the procedure that he must go through in exercising his discretion in this fashion. Specifically, our holding is not affected by the fact that the Offender Classification Manual was not adopted through APA procedures. The same situation was present in *Diel*, 158 Vt. at 556, 614 A.2d at 1228.

Finally, the Commissioner argues that requiring the Department to go through rulemaking procedures will produce absurd and unconstitutional results. The results will be absurd, according to the Commissioner, because this decision will limit his day-to-day decision-making authority. Nothing in this decision impinges on the Commissioner's day-to-day decision-making authority; the APA does not concern itself with daily individual decisions of the Commissioner, except as they are related to rules of general applicability. To the extent that the Commissioner promulgates new policies of general applicability, they are subject to the rulemaking procedure. The APA goes no further.

Furthermore, subjecting the new furlough policy to rulemaking procedures does not, as the Commissioner argues, "usurp" the "rightful powers of an agency of the executive branch of government." Cf. *Dep't of Revenue v. Novoa*, 745 So. 2d 378, 381 (Fla. Dist. Ct. App. 1999), *rev. denied*, 762 So. 2d 917 (Fla. 2000) (holding that Florida policy prohibiting Department of Revenue employees from preparing tax returns for private parties was not a rule for purposes of the Florida Administrative Procedures Act). It is the Legislature's prerogative to establish the procedures governing the establishment of agency policy of general applicability, just as it was the Legislature's prerogative to give defendant discretion over furlough policy in the first instance.

*Affirmed.*