**In re Petition of EHV-WEIDMANN INDUSTRIES, INC.**

[795 A.2d 1185]

No. 01-077

February 19, 2002. Petitioner EHV-Weidmann Industries, Inc. appeals the Vermont Public Service Board's ruling that EHV does not have the right to elect to receive electric service from the Village of Lyndonville Electric Department (LED) should it relocate its metering point from a section of its property located within the service territory of Central Vermont Public Service Corporation (CVPSC) onto a section of its property located within LED's service territory. The Board ruled that EHV did not have an ongoing right to change its electric service provider at will, simply by relocating its metering point. We affirm.

The parties stipulated to the relevant facts. CVPSC has provided electric service to EHV since 1970 and continues to do so currently. EHV has expanded and contracted its physical premises over the years, but, at all times, EHV's real property has straddled the service territories of CVPSC and LED, which were established by the Board in 1974. EHV's sole metering point, however, is located in CVPSC's service territory. EHV has not alleged that CVPSC is providing inadequate service. In February 2000, EHV petitioned the Board for a declaratory ruling that it had a right to relocate its metering point on its premises into LED's service territory and thereafter receive its electric service from LED. CVPSC and the Department of Public Service opposed the petition. LED did not participate in the matter and thus took no position on the petition.

The Board has jurisdiction to establish service territories for companies providing electric service "and to alter those territories from time to time as conditions warrant." 30 V.S.A. § 249(a).

In support of its claim that it had a right to change electric service providers, EHV relied on 30 V.S.A. § 251(b):

> In the event service is requested for premises in an area which two or more companies distributing electrical energy are authorized to serve and have facilities available for service to the property, the public utility company the existing service facilities of which are nearest the metering point on the premises to be served shall, subject to the other applicable provisions of this section, be entitled to serve the premise.

EHV maintained that when a customer's premises span the service territories of more than one electric service provider, the customer has the right to move its metering point within any of the service territories and thereby elect to receive electric service from the provider assigned to that territory. According to EHV, because its premises spanned the service territories assigned to CVPSC and LED, it was free to choose LED as its service provider simply by relocating its metering point on its premises into LED's service territory.

After examining the entire statutory scheme, 30 V.S.A. §§ 249-251, the Board adopted the hearing officer's recommendation and concluded that allowing a customer with real property straddling two service territories to exercise unrestricted discretion to choose (and re-choose) its service provider would be contrary both to the specific language within the statutory scheme and to the explicit legislative policy underlying the statutory scheme. The Board noted that switching electric service providers generally requires the new provider to extend and install facilities for its new customer, and that this would be contrary to the statute's stated legislative

policy to "eliminate or prevent conditions leading to unnecessary duplication of service and economic waste in the distribution of electrical energy." 1969, No. 257 (Adj. Sess.), § 2. According to the Board, if customers were permitted to change service providers at will, twice as many facilities might have to be installed to serve those customers.

The Board also emphasized that the statutory scheme was consistent with this legislative policy and did not support EHV's petition. As the Board pointed out, §§ 249 and 250 direct it to establish exclusive discrete service territories for each electric utility. In situations where more than one utility seeks to serve the same area, and the distribution facilities of the competing utilities are so intertwined or commingled that establishing an exclusive service territory would be impracticable, the Board may authorize two or more providers to serve the contested area, "subject to the provisions of section 251." 30 V.S.A. § 250. Under § 251(a), in an area having two or more authorized providers, a provider may not extend service to any customer "presently served" by another provider unless the other provider consents or the Board determines that the present service is inadequate. Under § 251(b), if "service is requested" in an area having two or more authorized providers, the provider with service facilities nearest to the customer's metering point is entitled to provide the service. Under § 251(c), if service is requested for premises that are not within the service territory of any provider, the provider with service facilities nearest to the customer's metering point is entitled to provide the service. Under § 251(d), no provider may extend services to premises within another provider's service territory unless the present provider requests the change or the Board finds that the present service is inadequate.

Reading § 251(b) in the context of the entire statutory scheme and the express legislative policy underlying the statutory scheme, see *Galkin v. Town of Chester*, 168 Vt. 82, 87, 716 A.2d 25, 29 (1998) (operative sections of statutory scheme must be read in relation to one another); *In re Wal\*Mart Stores, Inc.*, 167 Vt. 75, 84, 702 A.2d 397, 403 (1997) (in determining legislative intent, we look to the whole statute, its subject matter, its effects and consequences, and reason and spirit of law), the Board concluded that the phrase "in an area which two or more companies distributing electrical energy are authorized to serve" means an area to which the Board has assigned more than one provider the right to serve customers. According to the Board, because EHV's premises are not within a service territory to which multiple companies have been assigned, § 251(b) does not apply, and EHV is not entitled to change service providers simply by relocating its metering point.

On appeal, EHV argues that the Board erred as a matter of law in concluding that it was not entitled to change service providers pursuant to § 251(b) in the event it moved its metering point from its current location within CVPSC's service territory to a location within LED's service territory. According to EHV, the Board erred by confusing the word "area" in § 251(b) with the term "service territory." In EHV's view, the Legislature intended the word "area" to refer to the place where the customer's premises are located, not to the provider's service territory.

In considering these arguments, we apply a deferential standard of review. *In re Green Mountain Power Corp.*, 162 Vt. 378, 380, 648 A.2d 374, 376 (1994). "We accept the Board's findings and conclusions unless the appealing party demonstrates that they are clearly erroneous, and, in reviewing those findings and conclusions, we defer to the Board's particular expertise and informed judgment." *In re Citizens Utilities Co.*, 171 Vt. 447, 450, 769 A.2d 19, 23 (2000);

see *In re Green Mountain Power Corp.*, 162 Vt. at 380, 648 A.2d at 376 (as long as Board's decisions are directed at proper regulatory objectives, they enjoy strong presumption of validity and are entitled to great deference). "Absent compelling indication of error, we accept the construction of a statute by the administrative body responsible for its execution." *In re Twenty-Four Vermont Utilities*, 159 Vt. 339, 361, 618 A.2d 1295, 1308 (1992).

For the reasons stated by the hearing officer and the Board, we reject EHV's arguments. EHV's real property spans two distinct exclusive service territories, one designated to CVPSC, and the other designated to LED. There is no part of EHV's real property that is situated in a geographic area where the Board has authorized both CVPSC and LED to serve simultaneously, and there is no part of EHV's real property that is situated in a geographic area where no electric utility is authorized to serve. Thus, § 251(b) and (c) and the metering point provisions contained therein do not apply to EHV's real property.

Further, even if we accepted EHV's argument that its buildings are "in an area which two or more companies distributing electrical energy are authorized to serve," § 251(a), and not § 251(b), would govern any change in service provider. Subsection 251(a) pertains to property "presently served" rather than to property "to be served," which is governed by § 251(b). Metering point location is not a factor to be considered when applying § 251(a), which precludes a change of service absent the consent of the present provider or approval of the Board based on insufficient service. EHV cannot satisfy either condition.

In sum, EHV urged the Board to conclude that because it happens to own property spanning the service territories of two electric utility companies, it has ongoing discretion to choose which of those two companies will be its electric service provider, and it can invoke that discretion simply by relocating its metering point. By virtue of its owning such property, EHV characterized itself as having premises "in an area which two or more companies distributing electrical energy are authorized to serve." 30 V.S.A. § 251(b). The Board rejected this interpretation of § 251(b) after examining the entire statutory scheme and the stated legislative policy underlying that statutory scheme. We find no basis to disturb the Board's decision.

*Affirmed.*