**STATE of Vermont v. Hasso W. WUERSLIN**

[816 A.2d 445]

No. 01-523

October 30, 2002. This is an appeal from a denial of a motion to dismiss a charge against defendant for furnishing alcohol to a minor, a violation of 7 V.S.A. § 658. Defendant entered into a conditional plea, preserving the issue that the charge should be dismissed because it arose out of an invalid sting operation conducted by the Vermont Department of Liquor Control. We affirm.

On the evening of April 12, 2001, Winhall Police Officer Elizabeth Graham, DLC Investigator Tom Curran and DLC employee C.K., who is under the age of twenty-one, went to the Equinox Hotel bar as part of a DLC compliance check. C.K. sat down at the bar and ordered a beer. Appellant was the bartender working that night. In contravention of DLC General Regulation 13, requiring bartenders to demand positive identification from persons of questionable age before furnishing them with alcohol, defendant did not request identification from C.K. and proceeded to serve her the beer she ordered. Officer Elizabeth Graham witnessed the sale. Investigator Curran issued a citation to bartender Wuerslin for furnishing alcohol to a minor, in violation of 7 V.S.A. § 658. Defendant moved to dismiss the charge on the grounds that the sting operation procedures should have been established by rule making or regulations promulgated pursuant to the Vermont Administrative Procedure Act (VAPA), 3 V.S.A. §§ 801-849. The State argued that formal rule making is unnecessary because the DLC's authority to enforce laws prohibiting the sale of liquor to minors is inherent and self-executing. The trial court held that while the Department of Liquor Control is charged with adopting regulations to implement its administrative authority to control the sale of liquor under 7 V.S.A. § 104, its authority to enforce the liquor laws with respect to minors, found in subsection 1, is self-executing. Therefore, the trial court concluded that the Department's sting operation was incidental to the Department's expressly authorized powers and there was no violation of the VAPA.

Defendant raises two issues, but we do not reach the second because the first disposes of the appeal. Defendant argues that the Department's use of sting operations to catch bartenders who serve alcohol to minors represents a rule of general applicability, and as such, should have been promulgated as a rule under the VAPA. Defendant relies principally on our decision in *Parker v. Gorczyk*, 173 Vt. 477, 787 A.2d 494 (2001) (mem.), where we held that the Department of Corrections was required to promulgate, as a rule, its policy that prisoners convicted of violent felonies would be considered ineligible for furlough until the expiration of their minimum sentence. *Id.* at 479-80, 787 A.2d at 498-99. The practice of the Department of Corrections rose to the level of a rule because the Commissioner of Corrections had rule making authority with respect to inmates under the statute and the policy was one of general applicability. Defendant contends this case is like *Parker* because compliance checks by DLC are practices of general applicability, and the DLC is specifically directed by 7 V.S.A. § 104(5) to adopt regulations "necessary for the execution of its powers and duties and of the powers and duties of all persons under its supervision and control."

We disagree with defendant on two grounds. First, an agency is not required to enact regulations to carry out what its authorizing statute specifically directs it to do. See *In re Morgan*, 742 A.2d 101, 107 (N.H. 1999) (absence of promulgated administrative rules governing inspec-

tions of pharmacies did not invalidate accountability audit of pharmacist; neither audit form, which instructed inspectors to perform specific tasks during course of audit, nor internal procedural manual applicable only to agency employees, is subject to statutory requirements for promulgation of agency rules); *Greer v. N.J. Bureau of Securities*, 677 A.2d 763, 767 (N.J. Super. Ct. App. Div. 1994) ("[Formal rule making] is not necessary when the agency prescribes a legal standard or directive that is clearly and obviously inferable from the enabling act."); *Nevada v. GNLV Corp.*, 834 P.2d 411, 413 (Nev. 1992) ("[A]n administrative agency is not required to promulgate a regulation where regulatory action is taken to enforce or implement the necessary requirements of an existing statute."). The DLC has express authority to enforce the liquor laws with respect to minors by investigating violations and forwarding them for prosecution. 7 V.S.A. § 104(1). DLC employees may exercise law enforcement authority in Vermont. 20 V.S.A. § 2358(c)(1) (specifically including DLC employees exercising law enforcement powers within the definition of "law enforcement officer"). DLC investigators are in fact subject to criminal liability for dereliction in their law enforcement duties. 7 V.S.A. § 659 (making it a crime for "inspectors of the liquor control board" to refuse or neglect to investigate violations of Vermont's liquor control laws; officers subject to a 500 dollar fine or up to ninety days imprisonment, or both, for willful neglect to perform duties). Neither legislation nor administrative rule is required to detail every enforcement scheme that might be undertaken. *Dow Chemical Co. v. United States*, 476 U.S. 227, 233 (1986) ("When Congress invests an agency with enforcement and investigatory authority, it is not necessary to identify explicitly each and every technique that may be used in the course of executing the statutory mission."). Because the DLC is expressly authorized to enforce Vermont's liquor control laws, no interpretive rule is necessary to outline specific guidelines that the DLC must follow in looking for violations. As long as DLC acts within its authorized realm of enforcement, it is not required to give advance notice of its techniques to the bartenders or liquor establishments affected.

Second, the DLC's use of the sting operation, which is an investigative technique, is not a rule of general applicability. It may be a practice that the DLC uses quite frequently in the enforcement of the liquor laws, but frequency of use does not make a practice a rule. In *Parker*, the question was whether the Commissioner's practice making a certain class of prisoners ineligible for furlough rose to the level of a rule. We did not, as defendant suggests, hold that there was no difference between a rule and a practice, but that the two concepts were not mutually exclusive. *Parker v. Gorczyk*, 173 Vt. at 479, 787 A.2d at 498. It is possible for a practice of an agency to simply implement the express intention of its statute, and though a practice may exist, no rule making is required. Here, we conclude that investigative techniques used by the DLC are a method of enforcement of the liquor laws, and enforcement is expressly authorized.

Nor do we conclude that regulations regarding sting operations are necessary to carry out the DLC's authority to supervise the persons under its control. Defendant speculates that without such a rule bartenders could be targeted or entrapped by liquor control inspectors into serving minors despite their best efforts. Defendant argues that without detailed regulations including clear objective guidelines there are no checks upon the DLC, and individual inspectors may be tempted to abuse their discretion by targeting particular establishments for improper motives. He analogizes DLC sting operations to DUI roadblocks, arguing that carefully circumscribed,

objective guidelines are needed to prevent abuse. See *State v. Record*, 150 Vt. 84, 88, 548 A.2d 422, 425 (1988). Legal concerns about random vehicle stops, however, arise because such stops must be reconciled with constitutional rights to be free from unreasonable search and seizure protected by the Fourth Amendment to the U.S. Constitution and Article Eleven of the Vermont Constitution. *Id.* at 85, 548 A.2d at 423. The undercover sting operations being conducted by the DLC do not involve a "search or seizure" of the bartenders or their property; the investigations require the bartenders merely to perform their job, i.e., check identification and serve alcohol. Moreover, assuming for argument that there was a Fourth Amendment right at stake, rule making under VAPA would not be the remedy. In *Record*, we did not require police to engage in formal rule making to legitimate the establishment of roadblocks. We held that to protect the public's constitutional rights to be free from unreasonable search and seizure, roadblocks are permissible only when police follow a detailed set of standards ensuring stops are not unduly intrusive and drivers are not singled out arbitrarily. *Id.* at 90, 548 A.2d at 426. Having DLC inspectors among the customers at a bar is not disruptive to the routine of a bartender. Because DLC monitoring does not involve the detention or search of bartenders, no written guidelines are necessary to legitimate the DLC's undercover operations to enforce prohibitions on furnishing alcohol to minors.

Because we find that the DLC was not obliged to promulgate administrative regulations under the VAPA detailing how it would enforce the furnishing statute, we do not reach the question of whether, if formal rule making were required, the agency's failure to promulgate formal rules would require the dismissal of the charge against appellant.

*Affirmed.*