2003 VT 60

## In re WOODFORD PACKERS, INC.

[830 A.2d 100]

No. 02-056

¶ 1. June 26, 2003. Woodford Packers, Inc. (WPI) appeals the Environmental Board's decision vacating a land use permit that had been granted to it by the District Environmental Commission. WPI claims that the Board erred by: (1) permitting the Secretary of the Agency of Natural Resources (ANR) to determine both the floodway and floodway fringe when no such determination had been made by the Agency at the District Commission level; (2) allowing the ANR to change the standard for determining floodways and floodway fringes without following the Vermont Administrative Procedure Act (VAPA), and enabling the Secretary of ANR to determine the floodway and the floodway fringe on a case-by-case basis; (3) finding that the proposed development project was located in the floodway; and (4) finding that the project failed to meet Act 250 criteria concerning floodways, shorelines, and soil erosion. We affirm.

¶ 2. WPI proposed to build a thirty-unit retirement village on a 12.5 acre parcel in Bennington, Vermont, bordered on the north by the Roaring Branch

River and on the south and east by Route 9. WPI applied to District Commission # 8 for an Act 250 permit, which was granted in October 2000. The Commission found that both WPI's and ANR's engineers agreed that no proposed buildings or roads would be located within the floodway or floodway fringe of the Roaring Branch River. See 10 V.S.A. § 6086(a)(1) (requiring the District Commission to find that the development will not result in undue water pollution and, "[i]n making this determination it shall at least consider: the elevation of land above sea level; and in relation to the flood plains, the nature of soils and subsoils and their ability to adequately support waste disposal ...."). The Commission further determined that the project would not impinge upon the ability of the river to carry flood waters in the event of a 100-year flood, which the Commission explained was a "theoretical time frame" for determining the frequency of major flooding occurrences. ANR filed a motion to alter the District Commission's decision, which was denied. ANR appealed the Commission's decision to the Environmental Board, asserting that the Commission erred in its conclusions regarding criteria 1(D) "floodways," 1(F) "shorelines," 4 "erosion," and 9(K) "development affecting public investments" under 10 V.S.A. § 6086(a).

¶ 3. The Environmental Board concluded that WPI's proposed project failed to comply with criterion 1(D) for floodways. See id. § 6086(a)(1)(D)(ii) ("A permit will be granted whenever it is demonstrated by the applicant that, in addition to all other applicable criteria ... the development ... of lands within a floodway fringe will not significantly increase the peak discharge of the river or stream ... and endanger the health, safety, or welfare of the public or riparian owners during flooding."). The Board found that, for the purposes of Act 250, the Secretary of ANR determined that the entire project would be situated in

the floodway. Consequently, the Board observed that placement of buildings and other materials in the floodway would restrict or divert the flow of waters in the event of a 100-year flood, resulting in a significant increase in peak flow adjacent to and downstream from the project, thereby "pos[ing] a safety risk to anyone on the Project site, including but not limited to the senior citizens residing at the Project." The Board also concluded that the project did not meet criterion 1(F), pertaining to shorelines, because WPI failed to show that the project served some water-related purpose necessitating its location on the shoreline of the Roaring Branch River, pursuant to 10 V.S.A. § 6086(a)(1)(F) (applicant must demonstrate that the project "must of necessity be located on a shoreline in order to fulfill the purpose of the development"). Furthermore, the Board found that the project failed to meet criterion 4 for soil erosion, due to the presence of substantial erosion at and near the proposed project site. Because WPI's project failed to comply with three separate criteria under Act 250, the Environmental Board vacated WPI's land use permit. This appeal followed.

¶ 4. When reviewing a decision of the Environmental Board, this Court gives deference to the Board's "interpretations of Act 250 and its own rules, and to the Board's specialized knowledge in the environmental field." In re Wal*Mart Stores, Inc., 167 Vt. 75, 79, 702 A.2d 397, 400 (1997). Absent a compelling indication of error, we will sustain the Board's interpretations on appeal. Id. Given this deferential standard of review, we conclude that the Environmental Board did not abuse its discretion when vacating WPI's Act 250 permit.

¶ 5. WPI's principal contention is that the Board erred in vacating WPI's land use permit for failing to meet Act 250's 1(D) "floodways" criterion under 10 V.S.A. § 6086(a)(1)(D). In support of its argument, WPI contends that: (1) it was

error to permit the Secretary of ANR to determine the floodway when no such determination had been made by ANR at the District Commission level; (2) ANR should not be allowed to determine floodways and floodway fringes on a case-by-case basis, and it was error to allow ANR to determine floodways and floodway fringes without first proceeding through VAPA; and (3) the Board erred in finding that the proposed development would be located in the floodway.

¶ 6. WPI first asserts that the Environmental Board erred by permitting the Secretary of ANR to determine the floodway when no such determination had been made by the Agency at the District Commission level. Act 250 provides that "[t]he [environmental board] shall hold a de novo hearing on all findings requested by any party that files an appeal or cross appeal, according to the rules of the board." 10 V.S.A. § 6089(a)(3). In a de novo proceeding, the Board is required to hear the issues "as if there had been no prior proceedings in the district commission." *In re Killington, Ltd.*, 159 Vt. 206, 214, 616 A.2d 241, 246 (1992). WPI argues that ANR filed an appeal on four separate Act 250 criteria, yet it only presented testimony on two criteria at the District Commission level. However, the statute is clear that an appeal to the Environmental Board is heard de novo, and the District Commission made findings on all four criteria appealed, including 1(D) floodways criterion.

¶ 7. Nor are we persuaded by WPI's alternative theory that ANR should have been estopped from appealing the District Commission's decision because an ANR employee made a prior determination that WPI's project would not be located in the floodway or floodway fringe. Assuming arguendo that WPI relied on the representations of an ANR employee that the proposed project was not located in the floodway or floodway fringe when using the Federal Emer-

gency Agency (FEMA) National Flood Insurance Program (NFIP) maps, ANR was not foreclosed from presenting evidence on appeal regarding the inadequacy of the NFIP maps to support a finding that the site would be free from flood hazards. Estoppel is rarely invoked against the government and is only appropriate when the injustice that would ensue from a failure to find an estoppel sufficiently outweighs any effect upon the public interest that would result from estopping the government in a particular case. *In re Letourneau*, 168 Vt. 539, 547, 726 A.2d 31, 37 (1998). However well-founded WPI's criticism that the current permit system enables ANR to burden an applicant with inconsistent and contradictory information, the remedy is more likely to be found in the executive and legislative branches, rather than by resorting to the rarely invoked judicial estoppel of a governmental agency. The determination of the floodway and floodway fringe was properly before the Board.

¶ 8. WPI next argues that ANR's alteration of its long-standing practice of relying on NFIP maps to determine whether a proposed development was within a floodway or floodway fringe required ANR to promulgate the change by rule pursuant to VAPA's rulemaking procedures set forth in 3 V.S.A. §§ 836-844. As a corollary to this argument, WPI contends that without such promulgation, the Secretary of ANR is without legal authority to make floodway determinations on a case-by-case basis.

¶ 9. WPI asserts that for approximately twenty years ANR used NFIP maps to determine whether a proposed development was within either a floodway or a floodway fringe for Act 250 purposes, and that during WPI's permit application process, ANR unilaterally changed the floodway standards by employing fluvial geomorphology techniques

in lieu of the maps.* The Environmental Board's opinion noted that NFIP maps, while accurate at the time they were first drafted, often contain inaccuracies, since flood volumes change over time. Because of these inaccuracies, it is common for developers to have more detailed surveys done when the NFIP maps show that part of a proposed development is within the 100-year floodplain. The Board found that it is also customary for ANR to review the resurveyed maps when making its floodway determinations.

¶ 10. That is what happened in this case. In 1998, WPI's predecessor-in-interest, Aaron & Sons, Inc., had the project resurveyed. The new survey of the property revealed that a smaller portion of the project site was located in the floodplain than was depicted on the NFIP maps. During the Board proceedings, ANR Floodplain Engineer Karl Jurentkuff testified that he reviewed both the NFIP maps and the new survey map, and determined that the new survey map was more accurate. In a letter to the Bennington zoning administrator, however, he cautioned that, because the Roaring Branch River is a "wild stream," no fill should be placed beyond the floodway line scaled from the NFIP maps.

¶ 11. After examining all of the relevant data and extensive testimony, the Board found that the NFIP maps showed that a significant portion of the project site was located within the 100-year floodplain of the Roaring Branch River. Additionally, the Board found that because the banks of the river are unstable,

---

* Fluvial geomorphology is described by the Environmental Board as a science that "analyzes physical, chemical, biological, and social data to explain historical causes of problems being experienced in water bodies and to resolve or avoid conflicts between fluvial system dynamics and human investments in the landscape."

the flooding risk presented in this case is largely erosional. The Board concluded that while the NFIP maps are useful for predicting flooding risks due to inundation, fluvial geomorphology more accurately depicts flooding risks due to erosion. In addition to these findings, the Board held that the determination of whether a proposed development is located in a floodway is made by the Secretary of ANR.

¶ 12. The authorizing statute at issue in this case is Act 250. Section 6001(6) defines "floodway" as:

> the channel of a watercourse which is expected to flood on an average of at least once every 100 years and the adjacent land areas which are required to carry and discharge the flood of the watercourse, *as determined by the secretary of natural resources* with full consideration given to upstream impoundments and flood control projects.

10 V.S.A. § 6001(6) (emphasis added). Moreover, § 6001(7) defines "floodway fringe" as "an area which is outside a floodway and is flooded with an average frequency of once or more in each 100 years *as determined by the secretary of natural resources* with full consideration given to upstream impoundments and flood control projects." *Id.* § 6001(7) (emphasis added). The plain language of the statute states that the Secretary of ANR is authorized to make determinations as to what constitutes a floodway or a floodway fringe. See *In re Handy*, 171 Vt. 336, 341, 764 A.2d 1226, 1233 (2000) ("We presume that the Legislature intended the plain, ordinary meaning of the language, and if the meaning of that language is plain on its face, we normally ascertain legislative intent solely from the statutory language.").

¶ 13. In essence, WPI contends that the Secretary of ANR is without authority to implement the "floodway" and "floodway fringe" determinations without promulgating a rule pursuant to VAPA. We disagree. An agency is not required to adopt rules or regulations to carry out what its authorizing statute specifically directs it to do. See *State v. Wuerslin*, 174 Vt. 570, 570-71, 816 A.2d 445, 446-47 (2002) (mem.) (Department of Liquor Control not required to promulgate "sting operation" procedure pursuant to VAPA because Department has express statutory authorization to enforce liquor laws with respect to minors by investigating violations and forwarding them for prosecution). While ANR's alteration of its methodology for determining floodways may have been a surprise to WPI—apparently the first applicant to undergo "fluvial geomorphology" analysis—we cannot conclude that it lacked authority to do so.

¶ 14. Where an administrative agency's policy is challenged due to a failure to enact that policy pursuant to VAPA, we must discern whether the policy is a "rule" subject to the rulemaking procedures of VAPA or whether that policy is a "practice" that is exempt from those procedures. *King v. Gorczyk*, 2003 VT 34, ¶ 15, 175 Vt. 220, 825 A.2d 16. VAPA contains provisions that define both a rule and a practice. A rule is defined in 3 V.S.A. § 801(b)(9) as "each agency statement of general applicability which implements, interprets, or prescribes law or policy and which has been adopted in the manner provided by sections 836-844 of this title." On the other hand, a "practice" is defined as "a substantive or procedural requirement of an agency, affecting one or more persons who are not employees of the agency, which is used by the agency in the discharge of its powers and duties. The term includes all such requirements, regardless of whether they are stated in writing." *Id.* § 801(b)(7). A practice is exempt from rulemaking requirements unless an interested person requests that an agency officially "adopt a procedure describing an existing practice." *Id.* § 831(b); *King*, 2003 VT 34, ¶ 16. In addition, an agency "shall initiate rulemaking to adopt as a rule an existing practice or procedure when so requested by 25 or more persons or by the legislative committee on administrative rules." 3 V.S.A. § 831(c). Furthermore, VAPA provides that "[w]here due process or a statute directs an agency to adopt rules," the rule or practice in question shall be promulgated according to VAPA's rulemaking procedures set forth in 3 V.S.A. §§ 836-844. *Id.* § 831(a); *King*, 2003 VT 34, ¶ 16.

¶ 15. In this case, ANR's decision to utilize fluvial geomorphology to determine the presence of a floodway did not constitute the creation of a rule consisting of an "agency statement of general applicability which implements, interprets, or prescribes law or policy." 3 V.S.A. § 801(b)(9). While ANR's change in methodology in this case diverged from previous floodway assessments, this change did not alter any preexisting rule. ANR's use of the NFIP maps was never formally adopted as a rule. There was no written policy stating that the NFIP maps were used to determine whether development projects were located in floodways, nor was there any generally applicable written policy regarding ANR's use of the new methodology. There was also evidence suggesting that the NFIP maps were quite out-of-date, and fluvial geomorphology was a more accurate technique for making the floodway determination in this case.

¶ 16. We noted in *King* that "there is no bright line between exempt procedures and those rules requiring adoption pursuant to rulemaking requirements." 2003 VT 34, ¶ 23. The instant case, however, differs significantly from cases in which we have determined that an alteration in policy fell within the ambit of rulemaking under VAPA. This case can

be distinguished from *In re Diel*, 158 Vt. 549, 550, 614 A.2d 1223, 1224-25 (1992), which involved a challenge to the Department of Social Welfare's switch in policy not to consider federal fuel and utility subsidies when recalculating the income of Aid to Needy Families with Children (ANFC) recipients. This Court held that the Department's action fell within the ambit of rulemaking under VAPA, because it "both prescribed and implemented a policy intended to apply generally to a class of ANFC recipients." *Id.* at 554, 614 A.2d at 1227. Similarly, this case is distinguishable from *Parker v. Gorczyk*, 173 Vt. 477, 479-80, 787 A.2d 494, 497-98 (2001) (mem.), where the Department of Corrections' revised furlough policy constituted a generally applicable change in an existing agency policy that affected the rights of all prisoners convicted of violent felonies, and thus constituted a rule subject to proper promulgation under VAPA.

¶ 17. WPI's claim that ANR's application of its floodway determination on a case-by-case basis is without legal authority must also fail. The statutory authority enabling the Secretary of ANR to determine floodways and floodway fringes does not compel the determination be made by rules promulgated pursuant to VAPA. Standardless alteration of ANR's practice of determining floodways may give rise to a violation of due process if arbitrarily and capriciously applied, but in the matter before us the Environmental Board's finding that the Secretary's application of fluvial geomorphology was soundly grounded and supported by the evidence was not error. Nor are we persuaded that the Board erred in relying upon the Secretary's determination that the project would be in the floodway or floodway fringe. As with all Act 250 criteria, the applicant bears the burden of proof. We will accept the Board's findings unless the appealing party demonstrates that they are clearly erroneous. *In re EHV-Weidmann In-*

*dus., Inc.*, 173 Vt. 581, 582, 795 A.2d 1185, 1187 (2002) (mem.). We cannot conclude that the Board committed clear error with respect to the § 6086(a)(1)(D) floodways criterion.

¶ 18. We do not find error with respect to the Environmental Board's determination that WPI's project failed to comply with criterion 1(F) for "shorelines." See 10 V.S.A. § 6086(a)(1)(F). In order to develop on a shoreline, Act 250 requires the applicant to prove that the proposed project "must of necessity be located on a shoreline in order to fulfill the purpose of the development." *Id.* § 6086(a)(1)(F). Act 250 defines "shoreline" as "the land adjacent to the waters of lakes, ponds, reservoirs and rivers. Shorelines shall include the land between the mean high water mark and the mean low water mark of such surface waters." *Id.* § 6001(17).

¶ 19. WPI asserts that the Board erred by (1) improperly considering the project "adjacent" to the Roaring Branch River and (2) adopting a new standard for determining whether a proposed project meets the "of necessity" requirement of criterion (1)(F). We decline to address WPI's claim that its project was "not adjacent" to Roaring Branch River because the claim was not raised below. See *Bull v. Pinkham Eng'g Assocs., Inc.*, 170 Vt. 450, 459, 752 A.2d 26, 33 (2000) ("Contentions not raised or fairly presented to the trial court are not preserved for appeal."). Indeed, WPI's argument before the Board was that location of the project on the shoreline was necessary to fulfill "applicant's overall purpose in providing a high quality of life for the senior residents of the project." WPI cannot now argue that the Board erred in failing to address an argument never before it.

¶ 20. WPI further contends that the Board's application of the "must of necessity" language in § 6086(a)(1)(F) represented a change in the Board's interpretation of the statute. The Board, in fact, acknowledged as much, noting in its decision that it now placed more empha-

sis on the "threshold question" of whether the project must "of necessity" be located on a shoreline to fulfill its purpose. We find no error in the Board's consideration of whether a project's shoreline location "serves an integral part of the developmental scheme." We have previously held that "criterion 1(F) requires that the Board make its own determination that a development need be located on the shoreline . . . ." *In re McShinsky*, 153 Vt. 586, 591, 572 A.2d 916, 919 (1990). Here, the Board reasonably concluded, on the facts before it, that the applicant's laudable objective of providing walking paths and other facilities to meet the needs of the project's residents was not so integral to the developmental scheme to "of necessity" require location on a shoreline.

¶ 21. In addition, we agree with the Environmental Board's decision that WPI's project failed to comply with criterion 4 for "soil erosion," which provides that a proposed development must not cause "unreasonable soil erosion or reduction in the capacity of the land to hold water so that a dangerous or unhealthy condition may result." 10 V.S.A. § 6086(a)(4). In its decision, the Board explained that there had been significant erosion at and near the project site, and that the flood controls implemented by WPI, while intended to prevent the river from inundating heavily eroded areas, may actually increase the damage done by the river. The Board concluded that the existing erosion would be exacerbated by the proposed development, and therefore the project failed to comply with criterion 4.

¶ 22. Act 250 mandates that "[b]efore granting a permit, the board or district commission shall find that the subdivision or development" meets *all* ten criteria under 10 V.S.A. § 6086. *Id.* § 6086(a). Because WPI's proposed project fails to meet three of these criteria, the

Environmental Board properly vacated the Act 250 permit.

*Affirmed.*