2006 VT 17

## Esma Husrefovich, et al. v. Department of Aging and Independent Living

[898 A.2d 726]

No. 04-459

Present: Reiber, C.J., Dooley, Johnson and Skoglund, JJ., and Allen, C.J. (Ret.), Specially Assigned

Opinion Filed February 24, 2006
Motion for Reargument Denied April 18, 2006

*William R. Dysart*, Vermont Senior Citizens Law Project, Vermont Legal Aid, Inc., Burlington, for Appellants.

*Christina Byrom*, Waterbury, for Appellee.

¶ 1. **Allen, C.J. (Ret.), Specially Assigned.** Appellants in this case are elderly and disabled individuals who received in-home personal care services pursuant to a federally-approved Medicaid waiver

program.[1] They filed a consolidated appeal with the Human Services Board, asserting that the Department of Aging and Independent Living (DAIL) violated the law by failing to engage in rulemaking before imposing "maximums" on the amount of weekly service hours that they could receive. As relief, appellants sought the same level of service hours that they had received the year before the maximums were imposed. Two appellants, Esma Husrefovich and Earl Hoben, also argued that DAIL improperly denied their requests for variances from the maximums in certain service areas. In its opinion, the Board assumed arguendo that the alleged procedural violations had occurred, but it rejected appellants' claim that, as a result, they should receive more hours of services than warranted by their medical conditions. As to the two named appellants, the Board concluded that they were receiving an appropriate level of services for their medical needs, and therefore, their variance requests were properly denied. Because the Board's decisions are supported by the evidence, we affirm.

¶ 2. The HCBS Medicaid waiver program, administered by DAIL, provided eligible recipients with in-home care services as an alternative to institutionalized nursing home care. The program covered personal care services, designed to assist individuals in living at home, including assistance with eating, bathing, and dressing (called "activities of daily living" (ADLs)), as well as assistance with meal preparation, housekeeping chores, and other activities incidental to the care furnished or essential to the health and welfare of the individual (called "instrumental activities of daily living" (IADLs)). Under the terms of the waiver, there was no specific limit on the amount or volume of personal care services, but the "frequency, duration and volume of services" needed to be reasonable in terms of the participant's demonstrated needs for assistance and the presence of other comparable services that were intended to meet the participant's demonstrated needs.

¶ 3. Pursuant to the terms of the waiver, participants' needs were assessed annually through the formulation of a written individualized "plan of care." The plan of care was the "fundamental tool" by which the State would "ensure the health and welfare of the individuals

---

[1] The program at issue, called the "Home and Community Based Services for Elders and Adults with Disabilities" (HCBS), no longer exists. See 2005, No. 57, § 7, eff. June 13, 2005, repealing 33 V.S.A. §§ 6301-6303. The program was replaced by a new federally-approved waiver program called "Choices for Care."

served under [the] waiver" and for this reason, it was subject to periodic review and update. The annual reviews were designed to "determine the appropriateness and adequacy of the services" and "ensure that the services [were] consistent with the nature and severity of the individual's disability."

¶ 4. The annual assessments were generally conducted by a trained case manager who completed a "personal care worksheet." On the worksheet, the case manager specified the number of minutes per day that an individual needed assistance with various ADLs and IADLs. These figures were derived from a detailed functional assessment form, which was part of the participant's "individual living assessment." DAIL would then review each worksheet and authorize payment to the providers of the services in accordance with the number of hours that were approved for each service.

¶ 5. In early 2003, as part of a deficit reduction strategy, DAIL revised its worksheets and procedures to address inequities in the program that had developed statewide. The major change was to place "maximums" on the amount of time allowed for each ADL and IADL on the personal care worksheet, and to require recipients to request variances for any requested service above the maximums. Although previous worksheets contained guidelines for covered services, DAIL had generally approved the level of services requested. DAIL indicated that the changes were designed to encourage statewide uniformity and ensure that decisions were based on each individual's actual medical needs as opposed to lifestyle or personal preferences and habits, or both.

¶ 6. Appellants received services under the HCBS program, and before 2003, they were routinely approved for the level of services that they requested. During 2003, several appellants requested the same or nearly the same total number of service hours as had been approved the previous year. Because of the newly imposed maximums, however, these appellants had to request waivers in some service areas. Other appellants did not initially request any level of services that exceeded the maximums even though they thereby received a lower level of services than the previous year.

¶ 7. Appellants appealed the reduction in their overall hours, and DAIL reviewed each appellant's request for waivers. In June 2003, DAIL issued a new plan of care for each appellant. These decisions resulted in revisions in the number of hours for some appellants (i.e., some waiver requests were granted in whole or in part), but it left all appellants with varying decreases in the number of weekly hours

from the previous year. Appellants obtained a review of the decisions by the Commissioner of DAIL, and the Commissioner essentially affirmed DAIL's plan-of-care determinations. During this process, but not thereafter, DAIL continued each appellant's level of services at the 2002 levels. Only two appellants, Earl Hoben and Esma Husrefovich, requested further review of the factual bases of their 2003 care plans. In those cases, a hearing officer found that appellants had not shown sufficient medical evidence to overturn DAIL's decisions.

¶ 8. Appellants then brought a consolidated appeal to the Human Services Board, challenging the reduction in the hourly levels of personal care services that they received. They argued that: (1) the policy changes implemented by DAIL violated the Vermont Administrative Procedure Act (VAPA) because they were not promulgated pursuant to statutory rulemaking procedures; (2) DAIL violated their due process rights by reducing their hours without sufficient advance personal written notice and by failing to continue them at their 2002 service levels before their cases were decided on appeal; and (3) DAIL's policies were contrary to the terms of the waiver program. Appellants asked the Board to declare that the policy change was illegal and reinstate them at their 2002 service levels pending compliance with the VAPA and due process.

¶ 9. In its opinion, the Board assumed arguendo that the legal bases of appellants' arguments were correct, but it rejected appellants' claim that they were consequently entitled to receive services at their previous levels. The Board explained that only two appellants had challenged the factual bases of DAIL's 2003 individualized determinations. Thus, in effect, the remaining appellants had conceded that DAIL's 2003 plan-of-care decisions were appropriate to their actual medical needs. The Board explained that appellants did not allege any actual disagreement with the 2003 policy changes, and they were therefore left with only a procedural basis for the relief they sought. The Board concluded that, given the facts and procedural histories of these cases, no further relief was appropriate for appellants either as a matter of law or as a matter of fundamental fairness.

¶ 10. The Board described the considerable discretion afforded to states in administering the Medicaid waiver program, and noted that, unlike many other benefit programs, initial eligibility for Medicaid waiver services was not an entitlement. The Board also recognized that funding for the program was fixed on an annual basis and

Vermont, like other states, maintained a waiting list of otherwise-eligible program participants due to funding limitations. In light of these and other considerations, the Board found it reasonable, and arguably imperative, especially in periods of budget crises, for DAIL to attempt to ensure that program funds were distributed fairly and equitably among those who had been found eligible for services.

¶ 11. The Board found that appellants did not dispute DAIL's assertion that its new policy of imposing maximums on the levels of each service, and requiring waivers to exceed those maximums, was reasonably intended and likely to obtain more statewide oversight and uniformity in the provision of those services. They similarly did not dispute that the maximums were based on the generous assessments of medical experts as to the time necessary to perform each covered ADL and IADL for most individuals who required assistance in those areas. In recognition that individual needs might vary, DAIL allowed and clearly advised all recipients to request a waiver of the maximums to obtain the level of service for any ADL or IADL that they felt was necessary and appropriate. The Board found that, in keeping with the purposes of the program and with its goal of statewide uniformity, DAIL made each waiver determination in light of a recipient's demonstrated medical need, rather than on the basis of individual lifestyle or habit. Appellants did not challenge the wisdom and fairness of the procedure, nor that it had been made fully available to them during the course of the proceedings.

¶ 12. The Board found that, although the new policy resulted in decreased levels of services for many recipients, including appellants, given the lack of evidence (or, in all but two cases, even the claim) that anyone's medical needs were being unmet, both parties were forced to concede that appellants for many years prior to 2003 received levels of service that were not truly commensurate with their medical needs. The Board explained that, now, solely on the basis of alleged procedural deficiencies in DAIL's implementation of the 2003 policy revisions, appellants were in effect asking the Board to grant them the "relief" of continuing to receive more hours of service than their medical conditions warranted, at least in comparison to everyone else in the program. Regardless of the merits of the appellants' legal arguments, the Board explained, the hearing officer concluded that such relief was neither required nor appropriate under the Board's statutes and regulations.

¶ 13. The Board stated that, if it were to conclude that appellants were "entitled" to a further continuation of their 2002 benefit levels

solely on the basis of the procedural defects that they alleged, it would mean that every waiver recipient whose hours were reduced in this manner would be similarly entitled. Arguably, due process and equal protection considerations would then force DAIL to reinstate their benefits as well. Hundreds of recipients could thereby see their levels of service reinstated to a level above their presently demonstrated medical need. Due to the limited nature of the funding for the program, such "relief" by necessity could only come at the expense of the many needy applicants currently on the waiting list for future coverage.

¶ 14. The Board explained that the above considerations argued forcefully that it should defer such technical questions of procedural entitlement to a court of competent jurisdiction that, unlike the Board, was empowered to grant class action relief to all those recipients with potential claims identical to those of the appellants herein.[2] Given the unique nature of the Medicaid waiver program, and the lack of any claimed or demonstrated "inequity" in these appellants' present situation, the Board affirmed DAIL's decisions. Appellants appealed.

¶ 15. We begin with the individual claims raised by appellants Husrefovich and Hoben. As noted above, the Board concluded that these appellants' needs were served by their plans of care and appellants had failed to establish that they were entitled to the variances that they requested. The Board made numerous findings in support of its decision. Appellants do not challenge any of the Board's findings as unsupported by the evidence. Instead, they maintain that they were "entitled to continuous personal care

---

[2] Several participants in the HCBS program, including appellant Earl Hoben, filed a declaratory judgment action in Washington Superior Court in April 2005, challenging the State's administration of the HCBS program. See *Hoben v. State*, Docket No. 200-4-05 Wncv; see also 3 V.S.A. § 807 (validity or applicability of rule may be determined in action for declaratory judgment in Washington Superior Court if it is alleged that rule, or its threatened application, interferes with or impairs, or threatens to interfere with or impair, plaintiff's legal rights or privileges). Plaintiffs challenged certain policy changes in the program that had been or were about to be implemented, alleging that the changes would reduce their eligibility for two types of home care. Plaintiffs asserted that the State had enacted the changes without complying with formal rulemaking procedures, and they sought injunctive and declaratory relief; plaintiffs also sought class certification. In December 2005, the superior court dismissed the case as moot in light of the discontinuation of the HCBS program and the implementation of a new waiver program with regulations promulgated pursuant to formal rulemaking procedures.

services" until their medical conditions changed or improved. By this, appellants apparently mean that they were entitled to continue at the same level of services from year to year. Appellants also maintain that, even if it was their burden to demonstrate the continuous need for a certain level of services each year, they provided evidence from their treating physicians that supported their variance requests.

¶ 16. The Board reached a conclusion opposite to that urged on us by appellants, and its decisions are supported by the record. See *Hall v. Dep't of Soc. Welfare*, 153 Vt. 479, 486-87, 572 A.2d 1342, 1346 (1990) (Supreme Court will uphold Board's decision "where the record contains any credible evidence to fairly and reasonably support" its findings). We briefly recount the Board's findings as to each appellant. Appellant Husrefovich challenged the denial of her request for a variance in the area of "transferring" (she requested twenty minutes per day, which exceeded the maximum allotted time of fifteen minutes per day) and meal preparation (she requested ninety minutes of assistance per day, which exceeded the sixty-minute maximum). Appellant based her first request on her need for "supervision" when she moved around the home because she was at the risk of falling. Her second request was based on special dietary needs and preferences for her and her family.

¶ 17. After a hearing, DAIL determined that appellant's need for supervision in transferring was not a covered item under the Medicaid waiver program, and it advised her of several alternative services available to her and her family that would either provide or obviate the need for this form of assistance. DAIL also advised appellant of alternate services that would cover any claimed additional needs in the area of meal preparation. DAIL thus denied appellant's request for increases in time for transferring beyond the maximum of fifteen minutes per day and for meal preparation beyond the maximum of sixty minutes per day.

¶ 18. On appeal, the Board found that appellant had not submitted any direct evidence rebutting DAIL's assessment of her needs for transferring and meal preparation. It explained that the only evidence she offered was an opinion from her treating physician that the additional time was "medically necessary." The Board concluded that the limited variances that had already been granted by DAIL were sufficient to meet appellant's reasonable and legitimate needs in these areas as required by her medical condition, and it could not find that the amount of hours that she was granted significantly impaired her ability to remain living in her home as opposed to being

placed in a nursing home. The Board also concluded that the general opinions expressed by appellant's doctor did not meaningfully contradict DAIL's well-considered assessment of appellant's particular medical needs in the areas of transferring and meal preparation. The Board therefore affirmed DAIL's decision.

¶ 19. We find no basis to disturb the Board's decision. As discussed more fully below, appellant Husrefovich did not possess a right to receive personal care services at the same level from year to year. Nor was the Board required to accept the conclusory statement of her treating physician as irrefutable proof that the additional service hours she requested were medically necessary. As the Board found, the general statement offered by appellant's doctor was unpersuasive in light of the detailed assessment made by DAIL. The Board's decision is supported by credible evidence, and we find no error.

¶ 20. We reach a similar conclusion with respect to appellant Earl Hoben. Mr. Hoben requested variances in two services areas, heavy and light housekeeping. DAIL partially granted appellant's request, awarding 300 minutes per week out of the 400 minutes requested for light housekeeping, which exceeded the maximum of 180 minutes per week. DAIL determined that this level of service was sufficient to accommodate appellant's needs in light of his medical condition. DAIL denied appellant's request for a variance for heavy house-keeping (appellant requested 150 minutes per week but DAIL granted only the guideline maximum of 60 minutes per week) after finding that the extra hours were based on appellant's housekeeping preference rather than their necessity for his health and well-being.

¶ 21. At the hearing before the Board, appellant did not offer any direct argument addressing his need for housekeeping, and the only medical evidence offered was a letter from his treating physician that the requested services were "medically necessary" to allow him to live independently. Based on the evidence, the Board concluded that the limited variance granted by DAIL was sufficient to meet the reasonable housekeeping needs required by appellant's medical condition, and the level of services he received did not significantly impair his ability to remain living at home as opposed to being placed in a nursing home. The Board also found that the general opinion offered by appellant Hoben's doctor did not meaningfully contradict DAIL's well-considered assessment of appellant's particular medical needs in the areas of light and heavy housekeeping. It therefore

affirmed DAIL's decision. As with appellant Husrefovich, the Board's decision is supported by the evidence, and we find no error.

¶ 22. We turn to the merits of the consolidated appeal. On appeal, appellants reiterate their assertion that DAIL violated state and federal law by: (1) administering the HCBS program without valid regulations; (2) implementing "maximums" without engaging in rulemaking; (3) reducing the level of waiver services that they received without providing them appropriate written notice and an opportunity to appeal; and (4) failing to continue them at previous service levels during the pendency of the appeal process. Appellants maintain that the Board erred in denying them relief for these violations, and that its decision was based on factual findings and policy considerations that were not supported by the record or properly before the Board.

¶ 23. The Board's findings are supported by the evidence, and we find no error in its refusal to grant appellants the relief that they requested. As previously noted, the Board assumed arguendo that appellants' legal arguments were correct, but it denied appellants' request for relief based on its determination that appellants were receiving an appropriate level of services for their medical needs. The evidence supports this finding. The record shows that appellants' needs were reassessed during the annual review process, and an individualized plan-of-care was established for each appellant. With the exception of appellants Husrefovich and Hoben, appellants did not challenge the factual determinations underlying their individualized plans-of-care before the Board. They thus conceded that the plans were appropriate for their medical needs. Like the Board, therefore, we need not decide whether appellants' legal arguments are correct because, even assuming that they have merit, appellants offer no compelling support for their assertion that because of alleged procedural violations in administering the waiver program, they were entitled to receive more service hours than warranted by their medical needs.

¶ 24. Appellants cite *In re Diel*, 158 Vt. 549, 554, 614 A.2d 1223, 1227 (1992), as support for their argument that the appropriate relief in this case was the invalidation of the policy changes "that reduced the levels of appellants' waiver services." Appellants' reliance is misplaced. In *In re Diel*, the Department of Social Welfare unilaterally implemented a policy change that would have increased benefit payments to individuals who received benefits under the Aid to Needy Families with Children program. It then rescinded the

change. Recipients appealed, and we held that the agency had violated the recipients' due process rights by rescinding the new policy. *Id.* at 553-54, 614 A.2d at 1226. We declined to delineate the exact procedures required by due process, however, because we found that the Department's action fell within the definition of rulemaking under the VAPA, and the VAPA provided procedures that adequately protected appellants' rights. *Id.* at 554, 614 A.2d at 1226. Because the Department failed to comply with the APA, we concluded that its policy change was invalid. *Id.* at 554, 614 A.2d at 1227 (citing 3 V.S.A. § 846).

¶ 25. In this case, even if we were to conclude that DAIL's policy of imposing "maximums" was invalid, it does not follow that appellants would therefore be entitled to receive personal care services at their 2002 levels. As noted above, appellants' needs were reevaluated, and new plans of care were issued based on DAIL's individualized assessment of their needs. Appellants were plainly informed of their right to seek variances from the "maximums" during the evaluation process, and they had the opportunity to challenge any denial of their variance requests before the Board. With two exceptions, they failed to do so. Indeed, the Board specifically found that appellants did not contest the wisdom or fairness of the variance procedure nor that DAIL had made it fully available to them during the assessment process. Appellants have not shown that the rescission of the challenged policies would necessarily entitle them to the relief they requested from the Board.

¶ 26. We similarly reject appellants' assertion that they have a protected property interest in "the continued receipt of Medicaid personal care services they had been receiving." According to appellants, the Board erred as a matter of law in failing to recognize their "entitlement to continuing services as waiver participants." Appellants apparently assert that they are entitled to receive the same level of services each year. This argument is plainly refuted by the terms of the waiver program, which provide for an annual reevaluation process. Appellants continued to receive personal care services at a level deemed appropriate for their medical needs; they were not entitled to receive a level of personal care services that exceeded their needs.

¶ 27. Finally, we find no merit in appellants' assertions that the Board's decision rested on unsupported factual findings or policy considerations that were not properly before the Board. Appellants maintain that DAIL did not present any evidence in support of its

policy change or the methodology that it used in establishing the maximums. According to appellants, the Board had no evidence to support its finding that the maximums imposed by DAIL were based on the "generous assessments of medical experts," and they maintain that the Board's determination was premised on "the unsubstantiated assertions of DAIL's counsel" instead of evidence in the record. We are unpersuaded by these arguments. The Board specifically found that appellants did not challenge DAIL's assertions regarding how or why the maximums were established or imposed, nor the effect that they would have on establishing a more uniform administration of the HCBS program. In any event, given appellants' failure to demonstrate that their medical needs were not being met by their current plans-of-care, the resolution of this claim of error is immaterial here.

¶ 28. The Board's power is limited to affirmance, modification, or reversal of agency decisions. 3 V.S.A. § 3091(d). While the Board can review "agency policy," it may do so only as far "as it affects [a claimant's] situation." *Id.* § 3091(a). The Board does not have the power to issue a declaratory judgment or an injunction. Here, any determination made by the Board about the validity of DAIL's policy would not affect the level of services that appellants received, so the Board could grant no relief. Thus, despite the Board's power to reverse or modify agency decisions based on rules that the Board "determines to be in conflict with state or federal law," *id.* at § 3091(d), this is not a case where use of that power was necessary. Under the circumstances present in this case, and because the record supports the Board's findings that appellants' needs were met by their plans-of-care, the Board did not err in refusing to award appellants personal care services at their 2002 levels as relief for DAIL's alleged procedural violations.

*Affirmed.*