NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vtcourts.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2024 VT 63

No. 24-AP-027

In re Appeal of K.M.

Supreme Court

On Appeal from
Human Services Board

September Term, 2024

Michael J. Donohue, Chairperson

Barbara W. Prine, Burlington, and Susan Garcia Nofi, Saint Johnsbury, Vermont Legal Aid, Inc., for Appellant.

Charity R. Clark, Attorney General, Montpelier, and Benjamin Chater, Assistant Attorney General, Waterbury, for Appellee Vermont Department of Disabilities, Aging and Independent Living.

PRESENT: Reiber, C.J., Eaton, Cohen and Waples, JJ., and Johnson, J. (Ret.), Specially Assigned

¶ 1. **WAPLES, J.** In this case, we consider whether the Human Services Board may grant relief to a person with disabilities who is not receiving the services to which he is entitled. Through Medicaid programs administered by the Department of Disabilities, Aging, and Independent Living (DAIL), K.M. is supposed to receive more than thirty hours of support services each week. Since March 2020, he has received no more than five hours of services each week. K.M. petitioned the Board seeking an order directing DAIL to provide all the services to which he is entitled. The Board dismissed his petition for failure to state a claim upon which relief can be

granted. We reverse the Board's dismissal of K.M.'s petition and remand to the Board for further proceedings.

¶ 2. The following facts are drawn from the record and are undisputed for purposes of this appeal. K.M. is an adult with numerous disabilities, including autism, obsessive-compulsive disorder, a seizure disorder, and other conditions. For more than twenty years, he has received Medicaid-funded home and community-based developmental disabilities services provided by Washington County Mental Health Services (WCMHS). WCMHS is supposed to provide more than thirty hours per week of community supports. Since March 2020, K.M. has received only two-to-five hours of community supports each week. The reduction in services has caused K.M. various negative health effects.

¶ 3. WCMHS is a member of Vermont Care Partners, a statewide network of sixteen nonprofit community-based organizations that provide developmental disability services. The agencies that comprise Vermont Care Partners collectively report their staffing shortages and vacancies. The agencies report high staff vacancy and turnover rates for positions that provide care. A study of that workforce in Vermont found that low wages contribute to departures from the profession.

¶ 4. Though WCMHS is K.M.'s service provider, DAIL is ultimately responsible for all Medicaid-funded developmental services in Vermont. 18 V.S.A. § 8723. DAIL allocates and disburses Medicaid funds for the services, which are provided by designated agencies and specialized services agencies. Id. § 8907. Medicaid is a cooperative federal-state program under which states receive federal funds for state-administered Medicaid services in exchange for compliance with the requirements of the Medicaid Act. See 42 U.S.C. §§ 1396 to 1396w-8; see also Brisson v. Dep't of Soc. Welfare, 167 Vt. 148, 150, 702 A.2d 405, 407 (1997).

¶ 5. The federal Medicaid Act requires that state Medicaid programs "provide that all individuals wishing to make application for medical assistance under the plan shall have

2

opportunity to do so, and that such assistance shall be furnished with reasonable promptness to all eligible individuals." 42 U.S.C. § 1396a(a)(8). The statute defines "medical assistance" as "payment of part or all of the cost of the following care and services <u>or</u> the care and services themselves, or <u>both</u>." <u>Id</u>. § 1396d(a) (emphasis added). Implementing regulations require the designated state agency to: "(a) [f]urnish Medicaid promptly to beneficiaries without any delay caused by the agency's administrative procedures" and "(b) [c]ontinue to furnish Medicaid regularly to all eligible individuals until they are found to be ineligible." 42 C.F.R. § 435.930.

¶ 6. State law echoes the federal Medicaid requirements. DAIL must, "within the limits of funds designated by the General Assembly for this purpose, ensure that community services . . . are provided." 18 V.S.A. § 8907(a). DAIL's obligations extend to individual recipients. "Any person with a developmental disability . . . <u>shall</u> be provided with . . . [s]ervices and funding within the Department's available resources in accordance with both the system of care plan and the person's . . . written plan of service." <u>Id</u>. § 8726(c) (emphasis added). If a recipient has a "claim for assistance, benefits, or services" that is "not acted upon with reasonable promptness," the Human Services Board must grant the recipient a fair hearing. 3 V.S.A. § 3091(a).

¶ 7. In this case, K.M. asked the Board to order DAIL to provide him with all the services for which he is eligible under state and federal law with "reasonable promptness," as contemplated by 3 V.S.A. § 3091(a) and 42 U.S.C. § 1396a(a)(3). The Board concluded that his request did not state a cognizable claim for relief because it was "too vague to inform the Department as to the action to take in order to comply with an injunction." It explained that "[a]n order directing the Department to provide services when there is no staff available to perform them falls short of informing the Department of what would be required for compliance." The Board also interpreted K.M.'s request as seeking an order commanding DAIL to "address either the statewide staffing problem with the requisite urgency and/or the issue of Developmental Services

3

staff wages." It found that "any determination made by the Board about the validity of DAIL's policy would not affect the level of services that [K.M.] received, so the Board could grant no relief," quoting Husrefovich v. Department of Aging & Independent Living, 2006 VT 17, ¶ 28, 179 Vt. 456, 898 A.2d 726. The Board therefore granted DAIL's motion to dismiss K.M.'s petition. K.M. appealed.

¶ 8. On appeal, K.M. argues that the Board erred in concluding that it lacked authority to order DAIL to provide the benefits to which he is entitled. Whether the Board has the authority to grant relief is a question of law that we review de novo. In re P.J., 2009 VT 5, ¶ 7, 185 Vt. 606, 969 A.2d 133 (mem.). On appeal from a dismissal for failure to state a claim upon which relief can be granted, "we assume the truth of all factual allegations in the [petition] and accept all reasonable inferences that may be derived from [the petitioner's] pleadings." In re Blow, 2013 VT 75, ¶ 8, 194 Vt. 416, 82 A.3d 554 (quotation omitted).

¶ 9. We agree with K.M. that the Board had authority to grant relief here. The Board has statutory authorization to "make orders consistent with this title requiring the Agency to provide appropriate relief including retroactive and prospective benefits." 3 V.S.A. § 3091(d). The Board has the authority to order DAIL to provide prospective benefits to an individual who asserts that his services have not been provided with "reasonable promptness," as is required by federal and state statute. See 42 U.S.C. § 1396a(a)(8) (providing that medical assistance under the plan "shall be furnished with reasonable promptness to all eligible individuals"); 3 V.S.A. § 3091(a) (providing right to hearing when claim for assistance, benefits, or services is "not acted upon with reasonable promptness").

¶ 10. The Board and DAIL correctly note that this Court has stated that "[t]he Board does not have the power to issue a declaratory judgment or an injunction." Husrefovich, 2006 VT 17, ¶ 28. A closer reading of Husrefovich, however, reflects greater nuance. While the Board cannot issue injunctions unrelated to an "individual's situation," 3 V.S.A. § 3091(a), it retains authority

4

to provide appropriate relief to a claimant. Husrefovich, 2006 VT 17, ¶ 28. In Husrefovich, the petitioners sought to have the Board declare DAIL's policy change illegal because of its noncompliance with statutory rulemaking procedures. Id. ¶ 8. We affirmed the Board's rejection of their request because the petitioners could not show that properly promulgated rules would affect their benefits. Id. ¶¶ 9, 28. Since the petitioners could not show that the rule affected their situation as claimants, the Board could neither declare the rule invalid nor enjoin its enforcement. Id. ¶ 28. This one sentence from Husrefovich, quoted by DAIL and relied upon by the Board in this case, must be considered in its context.

¶ 11. DAIL points us to various Board decisions to support its contention that, after Husrefovich, the Board understands that it lacks authority to grant injunctive relief even where necessary to grant relief to an individual. DAIL's reliance on these cases is misplaced. Neither those decisions, nor any other Board decisions referencing Husrefovich, support such a limiting construction or provide evidence that the Board has previously construed Husrefovich in such a way.

¶ 12. In Fair Hearing No. A-12/20-846, for example, the petitioner requested that the Board order the Department for Children and Families to remove records of its investigation of the petitioner after it agreed to remove her from the child abuse registry. The Board declined to order the Department to remove the records because the Department was charged with " 'maintain[ing] all records of all investigations, assessments, reviews, and responses' " to child abuse charges. Fair Hearing No. A-12/20-846, at 5 (Hum. Servs. Bd. June 4, 2021) (quoting 33 V.S.A. § 4921(a)), https://outside.vermont.gov/agency/AHSHSB/Orders/Documents/2021/FH-A-12-20-846%20Order.pdf [https://perma.cc/ELX9-E56D]. Though the Board did note that it was "without authority to issue any type of injunctive relief," it found it was unable to offer relief to the petitioner because state law did not allow the records to be removed. Id. at 6. In effect, the

Department did not fail to comply with any laws with respect to the petitioner, so the Board found that it had no authority to order the relief she sought.

¶ 13.  In Fair Hearing No. B-10/22-581, the petitioner received housing through the transitional housing program administered by the Economic Services Division of the Department for Children and Families.  She received a notice to vacate from the hotel where she was staying, alleging that she used drugs.  She denied using drugs and requested that the Board order the redaction of any reference to drug use from her notice to vacate.  The Board declined to do so, noting that she had not received any adverse determination or action by the Division, which continued to find petitioner eligible for services and assisted her with finding another hotel.  Fair Hearing No. B-10/22-581, at 4 (Hum. Servs. Bd. Dec. 9, 2022), https://outside.vermont.gov/ agency/AHSHSB/Orders/Documents/2022/FH-B-10-22-581%20Order.pdf   [https://perma. cc/ WAS8-63XV].  As above, the Board referenced Husrefovich, but relied primarily on the fact that the state agency had not stopped providing services to her, so there was no agency action to appeal.

¶ 14.  Other Board decisions citing Husrefovich similarly do not support DAIL's contention that the Board has understood its remedial powers to be so limited.  See, e.g., Fair Hearing No. M-10/23-822, at 6 (Hum. Servs. Bd. Feb. 9, 2024), https://outside.vermont.gov/ agency/AHSHSB/Orders/Documents/2024/FH-M-10-23-822%20Order.pdf       [https://perma.cc/ BY5R-DBV5] (holding that the Board cannot make order addressing moot situation); Fair Hearing No. S-10/22-594, at 5-6 (Hum. Servs. Bd. Jan. 10, 2023), https://outside.vermont.gov/agency/ AHSHSB/Orders/Documents/2023/FH-S-10-22-594%20Order.pdf       [https://perma.cc/4DKM- UQDT] (holding that the Board cannot order hotel to do anything without agency action).

¶ 15.  Today's clarification of the scope of Husrefovich ensures that the Board can carry out the Legislature's will.  The Legislature expressly authorized the Board to "provide appropriate relief including retroactive and prospective benefits."  3 V.S.A. § 3091(d).  Husrefovich does not

curtail those powers; it merely clarifies, in accordance with 3 V.S.A. § 3091(a), that the Board can act only where agency action affects the petitioner's "situation." Husrefovich, 2006 VT 17, ¶ 28.

¶ 16. In dismissing K.M.'s petition, the Board concluded that his request for injunctive relief was too vague to inform DAIL as to the action to take in order to comply with an injunction. The Board correctly explained that an injunction must be specific enough to inform the parties "what they are called upon to do or refrain from doing in order to comply with the injunction." Am. Trucking Ass'ns v. Conway, 152 Vt. 363, 374, 566 A.2d 1323, 1330 (1989) (quotation omitted); see also V.R.C.P. 65(d) (providing that an order granting an injunction "shall be specific in terms").

¶ 17. We disagree with the Board's conclusion that the relief sought here was too vague. K.M.'s first petition to the Board sought an order obligating "his services to be restored to the amount allotted" to him. During motion practice before the Board, K.M. clarified that he was asking the Board to find DAIL "in violation of federal Medicaid law" and to order DAIL to provide him the "community-based services to which he is entitled." At a hearing, counsel for K.M. explained the relief sought: "we are asking for—we did ask for injunctive and declaratory relief, but we're also asking for prospective benefits." Later in the hearing, counsel reiterated that K.M. is "asking the Board to make an order for [DAIL] to provide the benefits" to which he is entitled. K.M. was clear in his repeated requests seeking an order for DAIL to provide the benefits to which he is entitled.

¶ 18. The Board concluded that an "order directing [DAIL] to provide services when there is no staff available to perform them falls short of informing [DAIL] of what would be required for compliance." We disagree. Compliance with such an order is straightforward to determine. If the Board orders DAIL to provide K.M. with the services to which he is entitled, determining compliance with that order requires only a determination of whether he has been

7

provided those services. DAIL's staffing challenges might make it more difficult to comply with such an order, but those challenges do not make the order unclear.

¶ 19. Because we conclude that the Board has the power to grant the relief requested, we reverse the Board's dismissal of the petition and remand for additional proceedings consistent with this opinion. Given our conclusion, we do not reach K.M.'s remaining contention that the Board's dismissal of his petition denied him a fair hearing under the terms of 42 U.S.C. § 1396a(a)(3).

<u>Reversed and remanded for further proceedings consistent with this opinion</u>.

FOR THE COURT:

_____

Associate Justice

8