**ASHLAND OIL, INC., Appellant,**

v.

**The CORPORATION COMMISSION of
the State of Oklahoma, Appellee.**

No. 48786.

Supreme Court of Oklahoma.

Feb. 6, 1979.

Rehearing Denied June 4, 1979.

C. Harold Thweatt and Brooke S. Murphy of Crowe, Dunlevy, Thweatt, Swinford, Johnson & Burdick, Oklahoma City, for appellant.

Harvey H. Cody, Jr., Conservation Atty., Oklahoma Corp. Commission, Oklahoma City, for appellee.

SIMMS, Justice:

Ashland Oil, appellant, seeks review of Corporation Commission Order No. 114104 which required Ashland to replug two abandoned wells, one of which was first plugged in 1946, the other in 1959.

The order was entered pursuant to proceedings initiated by an application for an enforcement order filed by the Manager of Pollution Abatement in the Conservation Division of the Commission.

Evidence adduced before a Trial Examiner for the Commission disclosed that Ashland drilled two wells on adjoining tracts of land in Hughes County, Oklahoma. The first, Fream No. 1, was drilled to a depth of 3,306 feet in 1945 and brought in as a gas well. Surface casing on this well reached a depth of 130 feet. Fream No. 1 was plugged and abandoned in 1959.

The record shows that the second well, Fream No. 2, was drilled in 1946 to a depth of 3,100 feet, but was plugged as a dry hole in the same year. Surface casing of Fream No. 2 reached a depth of 88 feet. Testimony further indicated that a water well located no more than 330 feet from Fream No. 1 was over 200 feet deep. Ashland's witnesses testified that no fresh water was encountered in either well bore.

Cecil Collis, the surface owner of the quarter section on which both wells were located, testified that in 1971, he noticed salt water issuing from the side of the mountain above his house, pond, and water well. Tests of the water in the pond and well evidenced the presence of chloride pollution.

The Commission determined that the surface casing put down in the wells under investigation was not sufficient to protect the domestic fresh water in the area. The Commission also found that the wells in question were the probable and most likely cause of ongoing salt water pollution in the vicinity of the Collis pond and water well. Consequently, the Commission ordered Ashland to replug Fream Nos. 1 and 2 in such a way as to protect fresh water in the area. It is from this order that Ashland appeals.

Ashland urges on appeal that *Minshall v. Corporation Commission,* Okl., 485 P.2d 1058 (1971) controls. In *Minshall,* the Corporation Commission found that a well drilled, plugged, and abandoned by Minshall was leaking gas through and onto the ground. Apparently relying upon 52 O.S. Supp.1965, § 310 [1], the Commission ordered Minshall to replug the well.

On appeal, the *Minshall* court stated in its syllabus:

"Neither 17 O.S.1961, § 53, nor any of the provisions of Senate Bill No. 396 of the Thirtieth (1963) Oklahoma Legislature (Chapter 191 O.S.L.1965; 52 O.S.Supps. 1965–1969, §§ 309 through 317) imposes upon any one an obligation to replug, or repair, an abandoned well that has been plugged but is presently leaking salt water, oil, gas, or other deleterious substances."

1. Amended by Laws 1970, c. 217, § 2.

Minshall, however, does not address the question of the Commission's authority to require proper plugging of an improperly plugged well, nor the question of replugging an abandoned well when the well was not properly cased when drilled. At page 1061 of *Minshall,* we read:

" * * * If the well has been plugged, the question of whether or not it was properly plugged in accordance with the then-effective rules and regulations is not involved."

Additionally, as the Commission correctly points out, the Court in *Minshall* clearly limited its consideration to the application of 52 O.S.Supps.1965–1969, §§ 309–315 on the question of an operator's responsibility and did not concern itself with amendments to that Act enacted subsequent to the order of the Commission or with any other existing statutes.

For purposes of the instant action it is important to note that the Court did not consider the impact of the 1970 Amendment to § 310 (Laws 1970, ch. 217, § 2) which provides:

" * * *

(b) that the operator or any other person responsible for plugging, replugging or repairing the well in such manner as is necessary to prevent further pollution cannot be found, or is financially unable to pay the cost of performing such work. * * * "

■ Without question, this provision supplies the explicit legislative imposition of the operator's liability for "plugging, replugging or repairing" which was found missing at the time *Minshall* was decided. Consideration of this provision together with numerous other statutory declarations [2] leaves absolutely no room for doubt that the Corporation Commission has the statutory power to order an operator to replug wells which were improperly plugged.

■ The Commission is empowered by legislative enactment to adopt rules and regulations relative to the drilling of oil and gas wells as may be necessary to protect fresh water strata. Title 52, O.S.1971, §§ 243, 273.[3]

Commission Rule 206(a) [4] was in effect at the time both Fream No. 1 and Fream No. 2 were drilled. The rule was introduced into evidence and is part of the record in these proceedings. It reads:

"Suitable and safe surface casing shall be used in all wells. In all wells drilled in areas where pressure and formations are unknown, sufficient surface casing shall be run to reach a depth below all domestic fresh water levels, and shall be of sufficient size to permit the use of an intermediate string of casing. Surface casing shall be set in or through an impervious formation, and shall be cemented by the pump and plug or displacement method with sufficient cement to circulate to the top of the hole.

"In wells drilled in areas where sub-surface conditions have been established by drilling experience, surface casing size at the operator's option shall be set and cemented to the surface by the pump and plug or displacement method at a depth sufficient to protect all domestic fresh water.

"Cement shall be allowed to set a minimum of twelve (12) hours under pressure before drilling the plug."

Then, in essence, 206(a) required that where pressure and formations were unknown, surface casing should be run to reach a depth *below all* domestic fresh water levels. On the other hand, where sub-surface con-

---

2. 17 O.S.1971, §§ 51, 53; 52 O.S.1971, §§ 86.2, 86.3, 236–247, 271–279, 309–320; 52 O.S.Supp. 1975, § 102.

3. 52 O.S.1971, § 243 reads: "The Corporation Commission shall have authority to make regulations for the prevention of waste of natural gas, and for the *protection* of all natural gas, *fresh water,* and oil bearing strata encountered in any well drilled for oil or natural gas, and to make such other rules and regulations, and to employ or appoint such agents, with the consent of the Governor, as may be necessary to enforce this Act." (E.A.)

4. The validity and applicability of Rule 206(a) to this case is not an issue.

ditions are known, surface casing must be run to a depth *sufficient to protect* all domestic fresh water.

The Commission maintains that the object of the appealed order is to remedy a violation of 206(a) which resulted in a threat to fresh water sources in the area. The Commission's position is that by failing to set the surface casing through an impervious strata, Ashland failed to insure against the possibility of communication between oil or gas bearing formations and fresh water levels.

Ashland asserts in its brief that it neither knew nor should have known that there was a water well in the vicinity because no fresh water was encountered in the drilling of either well; and that sub-surface conditions were not sufficiently well established in the area at the time the wells were drilled for Ashland to know whether there was sufficient casing to protect all domestic fresh water.

The evidence is undisputed that the surface casing on Fream No. 1 runs to a depth of 130 feet and that the surface casing of Fream No. 2 to a depth of 88 feet. The water well, located approximately 100 yards from Fream No. 1, is over 200 feet deep. This leaves at least 70 feet of open hole between the shoe of the casing on Fream No. 1 and the impervious strata upon which the water formation necessarily rests. Fream No. 2 has in excess of 100 feet of open hole.

■ Even if Ashland was unaware of sub-surface conditions, both wells failed to comply with Rule 206(a) because the surface casing was not set in or through an impervious formation.

■ Ashland also objects to the order for the reason that a number of other wells drilled by other operators in the same area have about the same amount of surface casing as the two Ashland wells. The argument is that in selecting only these two wells, the Commission has acted arbitrarily. In response, the Commission points out there is considerable evidence that extensive pollution has occurred and is occurring.

There is substantial opinion evidence in the record that the inadequately cased Ashland wells are the probable and most likely cause of the salt water pollution. The corrective action ordered by the Commission is reasonably calculated to correct that condition. By its order against Ashland, the Commission has not granted immunity to other possible offenders. Ashland may not rely upon the possible shortcomings of others to evade their own obligation.

■ It is further urged by Ashland that because Commission inspectors were on site and approved the original plugging of the well, it is both unreasonable to assume that the wells are improperly plugged, and that the Commission is estopped to raise the question of insufficient surface casing after the passage of so many years.

Evidence was adduced before the trial examiner that, in fact, the wells were improperly plugged in that the plugging was insufficient to protect fresh water as required by the Commission Rules on plugging then in effect. Non-compliance with the plugging rule was predicated on the fact that no cement plug was set below the fresh water zone.

■ The doctrine of estoppel has no application to the Commission where their acts were beyond the authority granted them or *ultra vires. State, ex rel., Commissioners of Land Office v. Phillips Petroleum Co.,* Okl., 258 P.2d 1193; *State, ex rel., Commissioners of Land Office v. Lamascus,* Okl., 263 P.2d 426 (1953). Even had the Commission's inspectors purported to give implied permission to Ashland to forego the requirements of Rule 206(a), such permission would not be binding. The Rule had the force and effect of law and an agent of the Commission was powerless to waive the requirements of the Rule. Additionally, persons dealing with public officials are charged with notice of the limitations upon their powers. *Gammill v. Shackelford,* Okl., 480 P.2d 920 (1970).

■ While it is true that some of the evidence was conflicting, the order was supported by substantial evidence and was a

lawful exercise of the Commission's power under the conservation statutes. This Court is not required to weigh the evidence on appeal, but to review the evidence and affirm the order where the findings and conclusions of the Commission are sustained by the law and substantial evidence. O.S. 1971 Const. Art. 9, § 20. *Superior Oil Co. v. Oklahoma Corp. Commission,* 206 Okl. 213, 242 P.2d 454 (1952); *Oklahoma Transp. Company v. Corporation Com'n.,* Okl., 552 P.2d 401 (1976).

ORDER OF THE CORPORATION COMMISSION AFFIRMED.

WILLIAMS, BARNES, DOOLIN and HARGRAVE, JJ., concur.

LAVENDER, C. J., and HODGES and OPALA, JJ., dissent.

IRWIN, V. C. J., dissents-Stare Decisis.