456

THE STATE OF NEVADA AND NEVADA GAMING COMMISSION, APPELLANTS, v. GNLV CORPORATION, DBA GOLDEN NUGGET HOTEL AND CASINO, RESPONDENT.

No. 22230

July 10, 1992                                    834 P.2d 411

*Frankie Sue Del Papa*, Attorney General, Carson City, *Lisa S. Miller*, Deputy Attorney General, Las Vegas, for Appellants.

*Schreck, Jones, Bernhard, Woloson & Godfrey*, and *Joanne Beckett*, Las Vegas, for Respondent.

## OPINION

*Per Curiam:*

Respondent, GNLV Corp. dba The Golden Nugget Hotel and

Casino ("Golden Nugget"), devised and operates a program known as the "24 Karat Club." The "24 Karat Club" is a program in which enrolled patrons (club members) automatically receive a fifty-cent ticket each time the last dollar of a total of $75.00 is placed in certain designated slot machines. After the patron wagers the 75th dollar, the slot machine dispenses a ticket worth fifty cents toward the purchase of a "gold certificate." Gold certificates may be redeemed for gaming tokens, cash, room rental, food, beverages or merchandise. The slot machines dispense the fifty-cent tickets irrespective of gains or losses resulting from the play involved in each $75.00 increment.

Appellant Nevada Gaming Commission ("Commission") disallowed deductions claimed by the Golden Nugget for payouts resulting from the redemption of Gold Certificates for tokens and cash. On judicial review, the district court reversed the Commission's decision. The lower court reasoned that under the terms of NRS 463.3715(2),[1] The Golden Nugget's "24 Karat Club" losses were the result of a legitimate wager. The district court also concluded that the Commission's decision constituted unauthorized ad hoc rule-making.

### DISCUSSION

The Commission argues that any losses by the Golden Nugget associated with the redemption of Gold Certificates are not the result of a legitimate wager as required by the plain language of NRS 463.3715(2). Instead, the Commission contends that the Golden Nugget's distribution of fifty-cent tickets to its patrons is a prize resulting from a patron's agreement to wager $75.00. *See* Las Vegas Hacienda v. Gibson, 77 Nev. 25, 28, 359 P.2d 85, 86 (1961) (a wager offers each party a chance of gain or loss, whereas the party offering a prize must lose what is offered upon performance of a specified act).

The Golden Nugget insists that Gold Certificate redemptions for tokens or cash may be deducted as a loss pursuant to NRS 463.3715(2), or in the alternative, that the Commission's ruling constituted impermissible ad hoc rule-making because the Commission extended the meaning of NRS 463.3715(2) without formally promulgating a regulation.

A "wager" exists when "two or more contracting parties

---

[1] NRS 463.3715(2) provides as follows:

In calculating gross revenue from slot machines, the actual cost to the licensee of any personal property distributed to a patron as the result of a legitimate wager may be deducted as a loss, but not travel expenses, food, refreshments, lodging or services.

hav[e] mutual rights in respect to the money [wagered] . . . and each of the parties necessarily risks something, and has a chance to make something upon the happening or not happening of an uncertain event.'' Las Vegas Hacienda, 77 Nev. at 28, 359 P.2d at 86. A prize differs from a wager in that the person offering the prize must permanently relinquish the prize upon performance of a specified act. *Id.* In a wager, each party ''has a chance of gain and takes a risk of loss.'' *Id.* Golden Nugget's distribution of fifty-cent tickets is mandated by a contract between the Golden Nugget and its 24 Karat Club members, and is not in any sense dependent upon the result of a legitimate wager.

Moreover, an administrative agency is not required to promulgate a regulation where regulatory action is taken to enforce or implement the necessary requirements of an existing statute. K-Mart Corp. v. SIIS, 101 Nev. 12, 17, 693 P.2d 562, 565 (1985). ''An administrative construction that is within the language of the statute will not readily be disturbed by the courts.'' Dep't of Human Res. v. UHS of The Colony, Inc., 103 Nev. 208, 211, 735 P.2d 319, 321 (1987). The Commission did not engage in ad hoc rule-making because the Commission did not expand the scope of the statute, but merely enforced the requirements of NRS 463.3715(2) in accordance with the plain dictates of the statute.

For the reasons specified above, we reverse the decision and order entered in the court below, and direct the district court to reinstate the Commission's decision.

MOWBRAY, C. J., SPRINGER, STEFFEN and YOUNG, JJ., and LANE, D. J.,[2] concur.

---

[2]The Honorable Mills Lane, Judge of the Second Judicial District Court, was designated by the Governor to sit in the place of THE HONORABLE ROBERT E. ROSE, Justice. Nev. Const., art. 6, § 4.