2012 OK CIV APP 39

**Doyal HOOVER and Jim Hogrefe, Appellants,**

v.

**BOONE OPERATING, INC., a corporation, and The Oklahoma Corporation Commission, Appellees.**

No. 109,015.

Court of Civil Appeals of Oklahoma, Division No. 4.

Oct. 27, 2011.

Certiorari Dismissed Feb. 6, 2012.

**816**

John M. Young, Joshua J. Young, Young Law Office, PLLC, Sapulpa, Oklahoma, for Appellant Doyle Hoover.

Niles Eugene Stuck, Stillwater, Oklahoma, Lone Oak Law, PLLC, for Appellant Jim Hogrefe.

William H. Huffman, Levinson, Smith & Huffman, P.C., Tulsa, Oklahoma, for Appellee Boone Operating, Inc.

Michele Craig, Deputy General Counsel, Oklahoma Corporation Commission, for Appellee Oklahoma Corporation Commission.

KEITH RAPP, Judge.

¶1 Doyle Hoover (Hoover) and Jim Hogrefe (Hogrefe), the respondents before the Oklahoma Corporation Commission en banc (OCC), appeal the Interim Order of the OCC finding them to be primarily responsible for plugging certain oil wells and the OCC applicant, Boone Operating, Inc. (Boone), secondarily responsible for such plugging operations. Boone did not appeal.

## BACKGROUND

¶2 Hoover acquired the surface ownership of a tract of land. Boone operated several oil wells situated on the property. Based upon his observations of the condition of the well equipment, Hoover believed the wells were abandoned. In all subsequent proceedings, Hoover claimed that the ownership of the well equipment reverted to him because of the abandonment.

¶3 By quitclaim conveyance, Hoover sold the well equipment to Hogrefe, who owned a salvage company. Hogrefe then removed the well equipment. Neither Hoover nor Hogrefe plugged any of the wells from which the property had been removed.

¶4 After learning of their actions, Boone filed an application with OCC requesting that OCC find Hoover and Hogrefe responsible for plugging the subject wells. Boone alleged that it could no longer economically operate the wells due to the actions of Hoover and Hogrefe. Boone further claimed that, by their actions, Hoover and Hogrefe took dominion and control over the wells without authority or permission. Boone claimed that Hoover and Hogrefe were then responsible for the plugging of the wells.

¶5 A hearing before an Administrative Law Judge (ALJ) resulted in a finding making Hoover, Hogrefe and Boone jointly and severally liable for plugging. All appealed to the OCC en banc. The OCC entered an Interim Order finding Hoover and Hogrefe to be primarily responsible for plugging and Boone secondarily responsible.

¶6 Hoover and Hogrefe appeal.

¶7 Motions for a stay have been denied by the OCC and the Supreme Court, and Hoover began plugging operations. Boone moved to dismiss the appeals on the ground that the appeals are moot. Boone's

motions to dismiss are denied because coerced compliance with the conditions of an order is not tantamount to accepting the benefit of a judgment, which acceptance waives the right of appeal. *Kaiser v. Kaiser,* 2001 OK 30, ¶ 15, 23 P.3d 278, 282. Hoover and Hogrefe might become subject to enforcement orders for failure to comply.

## STANDARD OF REVIEW

¶ 8 The Oklahoma Constitution provides, in part:

The Supreme Court's review of appealable orders of the Corporation Commission shall be judicial only, and in all appeals involving an asserted violation of any right of the parties under the Constitution of the United States or the Constitution of the State of Oklahoma, the Court shall exercise its own independent judgment as to both the law and the facts. In all other appeals from orders of the Corporation Commission the review by the Supreme Court shall not extend further than to determine whether the Commission has regularly pursued its authority, and whether the findings and conclusions of the Commission are sustained by the law and substantial evidence. Upon review, the Supreme Court shall enter judgment, either affirming or reversing the order of the Commission appealed from.

Okla. Const., art. IX, § 20.

¶ 9 This Court may not substitute its judgment upon disputed factual determinations for that of the OCC but is restricted to a determination of substantial evidentiary support for the order issued under authority of the statutes. *In re: Application of Continental Oil Company,* 1962 OK 131, ¶ 16, 376 P.2d 330, 334.

## ANALYSIS AND REVIEW

¶ 10 The first issue is: Does OCC possess the Constitutional or statutory authority to declare a surface owner or an equipment salvager responsible for plugging a well? The second issue is: If OCC possesses such authority, is its Interim Order in this cause supported by substantial evidence applicable to the exercise of that authority? The third issue is: If OCC possesses such authority, is it necessary for OCC to enact administrative rules exercising that authority with respect to persons other than owners or operators.

¶ 11 The OCC is vested with the general authority to regulate and supervise plugging of oil and gas wells. 17 O.S.2001, § 53; 52 O.S.2001 § 309.[1] The Legislature directed the OCC to prevent and control waste and pollution and regulate abandonment and closure of wells. 52 O.S. Supp. 2010, § 139. The plain meaning of these statutes gives OCC authority to take action to prevent and prohibit waste and pollution relating to activities under its jurisdiction and without regard to who or what entity may be the perpetrator of the waste or pollution.

¶ 12 Pursuant to this authority, OCC has promulgated plugging regulations. Okla. Admin. Code, Title 165, Ch. 10, Subch. 11. The relevant regulation reads:

**165:10–11–3. Duty to plug and abandon**

(a) **Scope.** This Section applies to:

---

1. Section 53 reads:
 The Corporation Commission is hereby authorized to promulgate rules for the plugging of all abandoned oil and gas wells. Abandoned wells shall be plugged under the direction and supervision of Commission employees as may be prescribed by the Commission. Provided, however, the Commission shall not order any oil or gas well to be plugged or closed if the well is located on an otherwise producing oil or gas lease as defined by the Commission, unless such well poses an imminent threat to the public health and safety which shall be determined by the Commission after conducting a public hearing on the matter.

Section 309 provides:
 The Legislature finds and declares that it is in the public interest to protect the waters and lands of the state against pollution and, for that purpose, it is necessary and desirable in the exercise of the police power of the state to provide additional means whereby wells drilled for the exploration, development, or production of oil or gas, or as injection or disposal wells, may be plugged, replugged, or repaired by the Corporation Commission or under the authority and direction of the Corporation Commission, hereinafter called "Commission".

(1) Joint and several liability of the owners and operator of a well for plugging.

(2) Time periods for plugging wells:

(A) Without casing.

(B) With only surface casing and cement.

(C) With production casing.

(3) Wells exempted from plugging.

(4) Notice of Temporary Exemption from Plugging granting permission to postpone plugging of a well.

(b) **Joint and several liability of owners and operators.** Any working interest owner and operator of any oil, gas, disposal, injection, or other service well or any seismic, core, or other exploratory hole, whether cased or uncased, shall be jointly and severally liable and responsible for the plugging thereof in accordance with this Subchapter.

Okla. Admin. Code, 165:10–11–3 (1999).

¶ 13 Hoover and Hogrefe argue that the OCC may not hold them financially responsible for plugging the wells because they are neither owners nor operators. They cite *Minshall v. Corporation Comm'n,* 1971 OK 74, 485 P.2d 1058, where the Court held that the statutes, then in force, did not impose an obligation on anyone to replug a leaking well and reversed an OCC order directing that the operator, Minshall, who had plugged the well, was not obligated to replug the well.

¶ 14 As explained in *Currey v. Corporation Comm'n,* 1979 OK 89, 617 P.2d 177, the Court clarified its decision in *Minshall* in a subsequent decision and after amendments to the statutes. *In Ashland Oil, Inc. v. Corporation Comm'n,* 1979 OK 17, 595 P.2d 423, the Court ruled that amendments to Section 310 of Title 52, supplied the statutory basis to hold an operator liable for plugging

or replugging a well. For its holding, the Court used the language of Section 310(A)(2), stating, "the operator of the well or *any other person responsible* for plugging, replugging, or repairing the well in such manner as is necessary to prevent further or future pollution cannot be found or is financially unable to pay the cost of performing said work." [2] *Ashland Oil, Inc.,* 1979 OK 17 at ¶ 12, 595 P.2d at 425 (emphasis added). This authority is a necessary part of the general authority of OCC to take action to prevent and prohibit waste and pollution relating to activities under its jurisdiction.

 ¶ 15 This Court rules that the OCC possesses the authority to hold liable, not only the operator, but also any other person responsible for plugging, replugging or repairing the well. However, as shown in this Opinion, OCC did not promulgate the necessary regulations to carry out that authority. This Court reaches this conclusion for the reason that the logical extension of the reasoning in *Ashland Oil Co.* is that the statute also includes the person responsible.[3]

¶ 16 Hoover and Hogrefe must be responsible persons in order to be held liable for plugging the subject wells. They meet the definition of "person." The word "person" is defined:

The term "person" as used in this act means any individual, business association or corporation, partnership, governmental or political subdivision, public corporation, body politic and corporate public authority, trust or any other legal entity.

52 O.S.2001, § 317.

¶ 17 Here, the OCC did not impose responsibility and liability on Hoover and Hogrefe on the basis of their status as surface owner and salvager.[4] The finding of their responsi-

---

**2.** The amended language was added in 1970. 1970 Okla. Sess. Laws, ch. 217, § 2. Section 310(A)(2) provides for OCC entry onto land when the operator of the well or any other person responsible cannot be found. Thus, the Court in *Ashland Oil Co.* inferred that the omission of operator responsibility found in *Minshall* has been resolved.

**3.** *See* n. 2.

**4.** The ALJ had found that the actions of Hoover and Hogrefe amounted to those of an "operator"

and thus imposed liability. The Oil and Gas Appellate Referee found that, by their actions, Hoover and Hogrefe "exercised dominion and control" over the wells. However, the OCC Interim Order finds and rules that Hoover and Hogrefe are parties responsible for harm to the wells and the increased risk of pollution. Thus, the OCC departed from the ALJ's rationale. The Interim Order recites:

The acts of Hogrefe and Hoover make each a responsible person for properly plugging these wells.

bility flowed from their acts regarding the wells in question. The findings by the OCC regarding the actions of Hoover and Hogrefe, and the consequences of those acts, are supported by substantial evidence. Moreover, there is no serious dispute about what Hoover and Hogrefe did to the subject wells.

¶ 18 However, whether OCC may take the next step and impose liability depends upon whether OCC could act in the absence of implementing OCC Rules pertaining to "responsible persons." This brings the analysis to the third issue.

¶ 19 The third issue relates to the absence of OCC rules and regulations. Section 165:10–11–3 of the OCC rules and regulations applies to the owner and operator of a well. Here, the concern is the responsibility and liability of a third category, the "other responsible person."

¶ 20 The parties have not shown that OCC has promulgated rules and regulations pertaining to "other responsible person."[5] However, when the purpose of a statute is specific, it is not necessary for an agency to promulgate formal rules or regulations. *Nevada v. GNLV Corp.*, 108 Nev. 456, 834 P.2d 411 (1992) (statute specifically precluded deductions of prizes from proceeds and agency denied the deduction). An administrative rule is not required in order to carry out what a statute authorizes on its face. *Smith v. New Hampshire Bd. of Examiners of Psychologists*, 138 N.H. 548, 645 A.2d 651, 654 (1994) (statute authorized Board to act on its own initiative to take disciplinary action for misconduct).

¶ 21 Here, the statutes recite broad legislative policy applicable to prevention of pollution and to protection of waters and lands. 52 O.S.2001, § 309. Section 309 does not provide the specificity found in those statutes where courts have found that an administrative rule is unnecessary.[6] Moreover, 17 O.S. 2001, § 53, authorizes OCC to promulgate rules for the plugging of all abandoned oil and gas wells. Section 53 also specifies that abandoned wells shall be plugged under the direction and supervision of Commission employees as may be prescribed by the Commission. Thus, Section 53 is legislative recognition that OCC must enact implementing Rules to carry out the broad delegation of authority to prevent waste and pollution and regulate plugging of wells.

¶ 22 Examination of OCC Rule 165:10–11–3, reveals that none of the criteria applicable to operators and owners in that Rule apply to the "other responsible person."[7] The OCC Rules lack criteria for the determination of who is a "responsible person."[8] Criteria for ascertaining whether the "responsible person" shares financial liability or bears the entire financial burden are absent from Section 165:10–11–3.[9] The Interim Order made

Interim Order, Conclusions of Law, ¶ 8. Record, p. 419, 422.

Therefore, refusal to admit evidence regarding ownership of the equipment or intent was not error, because those questions are not relevant.

5. OCC has procedural rules, but here the issue is an absence of substantive rules and regulations. In *Henry v. Corporation Comm'n of State of Okla.*, 1990 OK 103, 825 P.2d 1262, cited by Hoover and Hogrefe, the issue was deviation from rules and regulations.

6. The issue here goes beyond setting a standard of conduct where the administrative agency may set such standard by rulemaking or by adjudication when the statute adequately identifies the standard. *Maun v. Department of Prof'l Regulation*, 299 Ill.App.3d 388, 233 Ill.Dec. 726, 701 N.E.2d 791, 801 (1998) (overcharging for professional services).

7. Other parts of Section 165 appear to apply only to operators. OCC Rule 165:10–11–7 (plugging record required by operator); OCC Rule 165:10–11–9 (temporary exemptions from plugging available to operator).

8. The consequence of not having such a Rule is apparent in this case. In the earlier stages of the decision-making process, the attempt was made to characterize Hoover and Hogrefe as being the same as operators because they exercised control over the wells. In the final OCC decision, Hoover and Hogrefe became responsible because of what they physically did to the wells. Thus, at one stage the liability was status-based and then, at the final stage, the liability became action-based. Fairness requires that there be criteria in place for determination of who is an "other responsible person."

9. Section 165:10–11–3(b) provides only for joint and several liability as to working interest owners and operators. Here, pursuant to the Interim Order, Boone is not jointly and severally liable.

Hoover and Hogrefe primarily liable and Boone secondarily liable. The OCC does not have an OCC Rule authorizing this result.

¶ 23 In *Adams v. Professional Practices Comm'n,* 1974 OK 88, 524 P.2d 932, the Court ruled that the agency did not have authority to act because the agency had not enacted rules of procedure. In *Oklahoma Water Resources Bd. v. Texas Cnty. Irrigation and Water Resources Ass'n, Inc.,* 1984 OK 96, 711 P.2d 38, among other things, the Water Resources Board had not made a statutory yield determination for the water basin before issuance of a ground water permit and had not issued regulations in accord with such determination. In reversing the issuance of the ground water permit, the Court directed that such determination be made. Thus, the absence of a regulation contributed to invalidation of the agency action.

¶ 24 Although *Henry v. Corporation Comm'n of State of Okla.* involved a case factually different than here (the OCC departed from its procedural regulations), the basis for the ruling in Henry is relevant.[10] The Henry Court instructed that adherence to a set of rules avoids arbitrary proceedings and conclusions and results in fairness.

¶ 25 Therefore, this Court holds, first, that OCC possesses authority to require plugging of wells. Second, that authority extends to "other responsible persons" in addition to owners and operators. Third, before OCC may proceed against "other responsible persons," OCC must promulgate rules and regulations, which, as a minimum, provide criteria for determination of who is an "other responsible person" and the criteria for assigning to the "other responsible person" primary, joint, or secondary liability and responsibility. In addition, in the event of disparate treatment of parties subject to the Rules, there must be a rational basis for such disparity.

## CONCLUSION

¶ 26 The OCC possesses authority to require plugging of wells and that authority extends to "other responsible persons" in addition to owners and operators. The OCC's authority includes the authority to declare a surface owner or an equipment salvager responsible for plugging a well, if they are responsible persons. However, the OCC has not promulgated Rules for determination of who is an "other responsible person" and the criteria for assigning to the "other responsible person" primary, joint, or secondary liability and responsibility. Therefore, OCC did not have authority to act because the agency had not enacted such Rules. The Interim Order is reversed.

¶ 27 REVERSED.

GOODMAN, P.J., and THORNBRUGH, J., concur.

---

**10.** The concurring Opinion suggests that Henry has broader application than departure from existing procedural rules. *Henry,* 1990 OK 103 at ¶ 2, 825 P.2d at 1269–70 (Opala concurring).