2015 VT 88
 

 
 
 
In
re Zaremba Group Act 250 Permit (Cunningham, Bargfrede, Farnsworth,
Gibbons, Holme, Housten, Lisai, Morgan, Paten, Pellett, Reed,
Schoendorf, Velix, Watters, Appellants( (2014-162)

2015 VT 88

[Filed 26-Jun-2015]
 
NOTICE:  This
opinion is
subject to motions for reargument under V.R.A.P. 40 as well as formal
revision
before publication in the Vermont Reports.  Readers are requested
to
notify the Reporter of Decisions by email at: JUD.Reporter@state.vt.us
or by
mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont
05609-0801, of any errors in order that corrections may be made before
this
opinion goes to press.
 
 

 
 
 
 2015
VT 88
 
 
 

 

 
 
 
 No.
 2014-162
 
 
 

 

 
 
 
 In re Zaremba
Group Act 250 Permit
 
 
 Supreme Court
 
 
 
 
 (Shawn
Cunningham, Michele Bargfrede, Cindy Farnsworth, Richard Farnsworth,
Gail Gibbons, Robert Gibbons, Diane Holme, John Holme, Janice Housten,
Leonard Lisai, Scott Morgan, Donald Payne, Stephanie Payne, Kathy
Pellett, William Reed, Kathy Schoendorf, Claudio Veliz, Bonnie Watters
and Lew Watters, Appellants)
 
 
  
  
 On Appeal from
 Superior Court,
 Environmental Division
 
 
 
 
  
 
 
 November Term, 2014
 
 
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
 
 
 Thomas G. Walsh, J.
 
 
 
 
  
 
 
 

James A. Dumont of Law Office of James A. Dumont,
P.C.,
Bristol, and Charlotte B. Ancel of
  Sheehey Furlong & Behm PC, Burlington,
for
Appellants.
 
William H. Sorrell, Attorney General, and Justin
Kolber,
Assistant Attorney General,  
  Montpelier, for Appellees Agency of Natural
Resources
and Natural Resources Board.
 
David R. Cooper of Kenlan, Schwiebert, Facey &
Goss,
P.C., and Alan Biederman of 
  Biederman Law Office, Rutland, for Appellee
Zaremba
Group, LLC.
 
 
PRESENT:  Dooley, Skoglund, Robinson and
Eaton, JJ.,
and Morris, Supr. J. (Ret.),    Specially Assigned
 
 
¶ 1.            
SKOGLUND, J.   Neighbors of a plot of land in
Chester
appeal the environmental division’s decision to grant an Act 250 permit
amendment to appellee Zaremba Group to build a Dollar General store
(“the
Project”) on that plot.  We affirm.
¶ 2.            
The trial court found the following facts relevant to this
appeal. 
Zaremba is the owner of the 10.08-acre plot of land in question. 
The
proposed building site lies within the floodway of Lovers Lane Brook
(“the
Brook”).  The Project would result in a loss of flood-water
storage of
1,305 cubic yards, but is designed to include a flood-mitigation cut
area,
which would provide additional flood-water storage of 2,544 cubic
yards. 
The Project would narrow the Brook floodway at two points, but both of
these
areas are at least as wide as the Brook’s narrowest section, which is
just
south of the Project site.  The Project includes a minimum
fifty-foot
buffer along the Brook.  
¶ 3.            
The Project is located in Chester’s Residential Commercial
District.  The area 0.6 miles to the northwest of the Project site
is a
historical, dense, and walkable village center, while a contemporary,
less
dense mixed-use area lies to the south of the site.  Buildings
directly
around the Project site are mostly set back from roadways with
individual
driveways and parking lots.  Several properties in the immediate
area of
the site have large parking lots in front of their respective
buildings. 
Views looking out from the Project site include some dense vegetation,
a diner,
and a building containing a gas station, mini market, and liquor
outlet. 
The Project’s highest point is thirty-five feet, and its footprint
dimensions
are seventy-feet wide by 130-feet deep.  Its overall size is
bigger than
neighboring buildings, but the surrounding area includes buildings
larger than
the Project, such as the American Legion, St. Joseph’s Church, and a
self-storage facility.  These buildings vary in architectural
styles,
sizes, and ages, with different roof pitches, building materials,
numbers of
stories, colors, and numbers and sizes of windows.  
¶ 4.            
Despite this diversity among nearby buildings, the Project is
distinct
in several respects.  The Project is intended to appear similar to
a
backyard barn, but its warehouse-like features shine through.  It
has
large faux windows on each side of the front entrance, while no other
buildings
in the area have faux windows.  The front entrance is comprised of
full-length glass doors, while the sides of the building have no
windows. 
It has a cupola, as some other buildings in the area have, but its
cupola is
located off-center, toward the front of the building and closer to
Route 103,
unlike those of nearby buildings.  Finally, the Project’s building
has a
large, undifferentiated mass.  The Project, and especially these
features,
will be visible to travelers on Route 103.  
¶ 5.            
To subdivide the lot for the Project, Zaremba applied to the
District #2
Environmental Commission for an amendment to the existing Act 250
permit on
that property.  The Commission gave neighbors—the appellants
here—as well
as the Agency of Natural Resources (ANR) and Natural Resources Board,
interested-person status.  The Commission ultimately granted the
permit
amendment.  Neighbors appealed that decision to the environmental
division, claiming the proposed construction failed to meet the
following Act
250 Criteria: 1(D), “Floodways”; 5, “Traffic Safety and Congestion”; 8,
“Aesthetics”; and 10, “Conformance with Local and Regional
Plans.” 
Following trial, the environmental division affirmed the Commission’s
grant of
the permit.  Neighbors now appeal that decision to this Court,
claiming
that the environmental division’s findings as to Criteria 1(D),
“Floodways” and
8, “Aesthetics” were clearly erroneous.  We affirm.
¶ 6.            
Neighbors must overcome a deferential standard of review to
prevail on
appeal in this case.  “We will defer
to the
[environmental division’s] factual findings and uphold them unless
taking them
in the light most favorable to the prevailing party, they are clearly
erroneous.”  In re Application of Lathrop Ltd. P’ship I, II,
III,
2015 VT 49, ¶ 21, ___ Vt. ___, ___ A.3d ___ (quotation omitted). 
Its factual findings are clearly erroneous only if they are supported
by no
credible evidence that a reasonable person would rely upon to support
the
conclusions.  In re Eastview at Middlebury, Inc., 2009 VT
98, ¶ 10, 187 Vt. 208, 992
A.2d 1014; In re Bennington School, Inc.,
2004 VT 6,
¶ 11, 176 Vt. 584, 845 A.2d 332.  “Although
we review the environmental [division]’s legal conclusions de novo, we
will
uphold those conclusions if they are reasonably supported by the
findings.”  Lathrop, 2015 VT 49, ¶ 21 (quotation and
citation
omitted).  
¶ 7.            
Criterion 1(D) requires the
applicant to show,
and the environmental division to find, the project’s impacts on
floodways will
not endanger the public.  That provision addresses two distinct
flooding
hazards: (i) inundation flooding, resulting from diversion or
restriction of
floodwaters; and (ii) erosion hazards, caused by “significantly
increas[ing]
the peak discharge” of the waterway.  See 10 V.S.A. §
6086(a)(1)(D). 
ANR also plays an important role in cases involving Criterion
1(D).  ANR
has authority, pursuant to Act 250, to determine whether a particular
project
will fall within a floodway.  In re Woodford Packers, Inc.,
2003 VT
60, ¶ 13, 175 Vt. 579, 830 A.2d 100 (mem.) (interpreting 10 V.S.A.
§§ 6001(6) and (7)).  Moreover, at an environmental-division
trial,
ANR may, as intervenor, present evidence relevant to its expertise,
which the
environmental division may rely upon in deciding the case.  See id.
¶ 17 (noting that while burden of proof remains on applicant,
environmental division may rely on evidence presented by ANR); see also
10
V.S.A. § 8504(n) (allowing persons granted interested-party status
by
District Commission to intervene in appeals to environmental
division).  
¶ 8.            
At trial, two experts testified as
to the
Project’s potential floodway impacts: one from ANR and one on behalf of
Zaremba.  Neighbors presented no evidence with respect to
Criterion 1(D),
so their arguments on appeal are limited to showing the inadequacy of
ANR’s and
Zaremba’s expert testimony.  Neighbors do not challenge the
environmental
division’s findings as to inundation flooding,* but contest
its determination as to erosion in two ways.    
¶ 9.            
They first argue that the environmental division’s finding that
the two
floodway constrictions caused by the Project would be wider than the
narrowest
existing constrictions is contradictory to the evidence and amounts to
reversible error.  Zaremba’s expert—who presented the only
evidence
directly related to this finding—testified that the Project’s narrowest
constriction of the Brook floodway would be “no more narrow [than the
current
narrowest area]; it would be equal to or greater.”  The
environmental
division’s finding that the constriction would be “wider” rather than
“wider or
as wide” is indeed erroneous, but harmless.  Although Zaremba’s
expert
testified that the velocity of flowing water generally increases at
points of
constriction, other things being equal, he also explained that it
decreases
proportionately wherever the waterway widens, as the Brook floodway
does at
various points upstream and downstream of the new constrictions.
 Thus,
any increase in velocity would be limited in time and space to the two
newly
constricted areas.  Even so, he explained that the additional
flood
storage created by excavation for the Project would generally cause
lower
maximum water velocity, as compared with current floodway
conditions.  The
environmental division found the same.
¶ 10.        
Velocity, moreover, is not the only factor that determines
erosion.  Both ANR’s Technical Guidance document for Criterion
1(D),
admitted into evidence in this case, and the expert testimony make
clear that
volume or height of floodwaters, tailwater, channel slope, sediment
load, and
channel-boundary resistance collectively determine erosion. 
Zaremba’s
expert testified, and the environmental division found, given the
existing
constrictions, the Project will not increase the volume of floodwaters.
 ANR’s
expert’s testimony corroborated that of Zaremba’s expert, as ANR’s
expert
determined the Project’s minimum fifty-foot buffer adequately addressed
erosion
hazards.  The environmental division agreed.  The testimony
of both
of the floodway experts and related evidence thus support the
conclusion that
the Project would not significantly increase peak discharge, and would
not
endanger the public.  The environmental division’s misstatement
concerning
the width of constriction does not significantly factor into this
conclusion.
¶ 11.        
Neighbors also claim the
environmental
division had insufficient evidence on which to base its finding that
the
Project would not harm the public because certain computer modeling,
which was
not performed, was necessary to assess whether the changed topography
would
cause increased velocity and an erosion hazard.  This
argument
fails because an applicant’s burden under Criterion 1(D) does not
require
computer-modeling evidence.  Neighbors cite to no authority for
this
proposition, and it has no basis in the statutory language.  The
environmental division need only determine by credible evidence that
the
project would not significantly increase peak discharge in such a way
as to
endanger the public.  See 10 V.S.A.
§ 6086(a)(1)(D)(ii).  As
explained above, the environmental division did just that, so we affirm
its
findings and conclusions as to Criterion 1(D).
¶ 12.        
We next turn to neighbors’ argument regarding Criterion 8,
Aesthetics.  The framework for the environmental division’s
analysis under
Criterion 8 is known as the Quechee test.  See Lathrop, 2015 VT 49, ¶ 74 (citing In re Quechee
Lakes Corp.,
Nos. 3W0411-EB, 3W0439-EB, slip op. at 19-20 (Vt. Envtl. Bd. Nov. 4,
1985),
http://www.nrb.state.vt.us/lup/decisions/1985/3w0439-eb-fco.pdf). 
The Quechee
test provides:
[A] project violates Criterion 8 if: (1) the
proposed
project will have an adverse aesthetic impact and (2) that impact will
be
undue.  An impact is undue if: (1) it violates a clear, written
community
standard intended to preserve the aesthetics or scenic, natural beauty
of the
area; (2) it offends the sensibilities of the average person; or (3)
the
applicant has failed to take generally available mitigating steps that
a
reasonable person would take to improve the harmony of the proposed
project
with its surroundings.
 
Id.
(citations, quotations, and alterations omitted).  
¶ 13.        
The environmental division concluded that the project would have
an
adverse aesthetic impact on the surrounding area, but that the impact
would not
be undue.  Neighbors challenge this latter conclusion, but based
on only
one of the three prongs of the undue-impact test—violation of “a clear,
written
community standard intended to preserve the aesthetics” of the
area.  Neighbors
offer, as such a standard, a specific provision of the Chester Zoning
Regulations.  Our inquiry regarding aesthetic impacts is thus
limited to
whether the court clearly erred in analyzing that zoning
provision.  If
that provision constitutes “a clear, written community standard
intended to
preserve the aesthetics” of the area, and if the Project would violate
it, the
project’s impact would be undue and it could not go forward.  In
re
Times & Seasons, LLC, 2008 VT 7, ¶ 8, 183 Vt. 336, 950
A.2d
1189.  
¶ 14.        
The statement at issue is a criterion that the town’s
development review
board “should . . . consider[]” in reviewing
applications
for conditional-use permits: that “all construction of new
buildings . . . adhere harmoniously to the over-all
New
England architectural appearance which gives the center of Chester its
distinct
regional character and appeal.”  Town of Chester Zoning
Regulations,
§ 9.4(c)(4).  The trial court did not determine whether this
language
provides a clear standard intended to preserve aesthetics because the
court
concluded that, even if it does, the Project would not violate
it.  We
hold that the provision does not qualify as such a standard, so our
inquiry
stops there. 
¶ 15.        
Assuming without deciding that such a discretionary factor could
be a
clear standard intended to preserve aesthetics, it must contemplate the
actual
aesthetics of the area, rather than some idealistic portrait.  See
In
re Times & Seasons, LLC, 2008 VT 7, ¶ 8
(explaining that community standard must be intended to preserve
aesthetics of area).  The criterion refers to the “center
of
Chester”—a vague description that we will assume means the historic
village
center—but the Project is not located in the pedestrian-oriented
village
center; it is more than a half-mile away in a vehicle-oriented part of
the
town.  We need not decide whether the reference to “over-all New
England
architectural appearance” in this provision would provide clear
guidance if
this project were in the historic village center.  The Project’s
immediate
surroundings—including a flat-roofed structure containing a gas
station, mini
market, and liquor store—and the entirety of diverse architecture in
the area
cannot be said to conform to a discernible “New England architectural
appearance.” 
These conflicting architectural styles are evidence that the zoning
criterion
is not a clear community standard intended to preserve aesthetics, at
least as
applied to the area surrounding the Project.  See In re
Woodstock Cmty.
Trust & Hous. Vt. PRD, 2012 VT 87, ¶ 33 n.8, 192 Vt. 474,
60 A.3d
686.  
¶ 16.        
Because we reject neighbors’ challenges based on Criteria 1(D)
and 8, we
affirm the environmental division’s grant of an Act 250 permit
amendment to
Zaremba.
Affirmed.

 
 
 
  
 
 
  
 
 
 FOR THE
COURT:
 
 
 
 
  
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
 Associate Justice
 
 
 

 






* 
In the Statement of Issues of their brief, neighbors purport to
challenge the
environmental court’s findings with respect to Criterion 1(D)(i), but
offer no
arguments or authority to show that the environmental division’s
decision as to
that specific provision should be overturned.  We therefore will
not
consider the issue.  See Flex-A-Seal v. Safford, 2015 VT
40,
¶ 20, ___ Vt. ___, ___ A.3d ___ (Supreme Court will not consider
issues
not adequately briefed).